MILLER BROTHERS v PUBLIC SERVICE COMMISSION

WOLVERINE GAS & OIL COMPANY v PUBLIC SERVICE
COMMISSION

AMOCO PRODUCTION COMPANY v PUBLIC SERVICE
COMMISSION

Docket Nos. 104272, 104391, 107930. Submitted March 7, 1989, at
   Lansing. Decided September 18, 1989. Leave to appeal applied
   for.

On October 13, 1986, Consumers Power Company filed an applica-
   tion with the Public Service Commission for approval of in-
   creased prices to be paid pursuant to gas purchase contracts
   with fourteen producers of natural gas. The contracts included
   a price redetermination clause to provide the producers protec-
   tion from possible inflation. The contracts were executed be-
   tween June, 1971, and May, 1973, and had durations of approx-
   imately twenty years. The price redetermination clauses re-
   quired the contract price to be redetermined in 1976, 1981, and
   1986. The PSC approved the redetermined contract prices in
   1976 and 1981, which were also always below prevailing mar-
   ket prices. The 1986 redetermination by Consumers resulted in
   a price almost twice the market price. The PSC found the
   redetermined price to be unreasonable and rejected Consumers'
   application on the basis of the large gap between the current
   market prices and the price requested by Consumers. Miller
   Brothers, Delta Oil Company, Inc., Wolverine Gas & Oil Com-
   pany, Inc., and Amoco Production Company, some of the pro-
   ducers involved, intervened in the proceedings before the PSC
   and filed three separate appeals from the decision of the PSC.
   The appeals have been consolidated.

   The Court of Appeals *held:*

   1. Under 1929 PA 9, MCL 483.101 *et seq.*; MSA 22.1311 *et
   seq.*, the PSC has jurisdiction to regulate changes and contract
   prices by way of approving the reasonableness of those prices.

REFERENCES

Am Jur 2d, Public Utilities §§ 235 *et seq.*

See the Index to Annotations under Public Service Commissions;
   Utilities.

Section 10 of the act clearly provides that contract price changes may be made by application to and approval by the PSC. The PSC's actions in this case do not impair or infringe the producers' right to freely contract. The producers were engaged in an extensively regulated area of commerce and executed their contracts after the act had long been in existence.

2. The PSC was not required to base its determination on facts or circumstances identical to those affecting the producers. The PSC was aware of the nature and previous public benefit of the long-term contracts involved, the reliability of supply provided by the contracts, and the large acreage covered by the contracts. The fact that the PSC relied on evidence of current intrastate gas prices which were not based on long-term contracts and on evidence of incremental interstate gas prices does not make the PSC's decision unreasonable.

3. Appellants have failed to meet their burden of proving that the PSC's decision was unlawful or unsupported by competent, material, and substantial evidence.

Affirmed.

PUBLIC UTILITIES — NATURAL GAS — LONG-TERM CONTRACTS — PRICE REDETERMINATIONS — PUBLIC SERVICE COMMISSION.

The Public Service Commission has jurisdiction to regulate changes in long-term contracts between a public utility and its natural gas suppliers and in the contract prices paid by the utility to its suppliers for the natural gas; it is not unreasonable for the PSC to consider incremental interstate prices and current intrastate prices in determining the reasonableness of the requested changes (MCL 483.110; MSA 22.1320).

*J. Andrew Domagalski,* for Miller Brothers and Delta Oil Co., Inc.

*Varnum, Riddering, Schmidt & Howlett* (by *Jack D. Sage* and *Mark L. Collins*), for Wolverine Gas & Oil Co., Inc.

*Lynch, Gallagher, Lynch, Shirley & Martineau* (by *Byron P. Gallagher*), for Amoco Production Company.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Don L. Keskey* and

*William W. Derengoski,* Assistant Attorneys General, for defendant.

Before: SHEPHERD, P.J., and CYNAR and SAWYER, JJ.

SHEPHERD, P.J. These three consolidated cases are appeals from the same September 29, 1987, decision of the Michigan Publice Service Commission, No. U-8600, which rejected the application of Consumers Power Company for approval of a change in the contract price for natural gas. Appellant Amoco also appeals from a March 18, 1988, PSC order denying its application for rehearing. These appeals are as of right. MCL 462.26; MSA 22.45.

On October 13, 1986, Consumers Power Company filed an application with the PSC for approval of increased prices to be paid pursuant to gas purchase contracts with fourteen producers of natural gas who operate in an area known as the Northern Niagaran Reef Trend. Appellants (producers) in these cases are some of those producers; they were permitted to intervene in the proceeding before the PSC.

The contracts involved were executed between June, 1971, and May, 1973, and had durations of approximately twenty years. The terms of all of the contracts were substantially similar. The contract with Amoco Production Company was executed on June 9, 1971, and covered the largest area, approximately 134,000 acres. By virtue of these contracts, Consumers acquired dedicated reserves in an area covering 244,000 acres. The quantity of gas involved and the long-term nature of the contracts enabled Consumers to construct (together with Michigan Consolidated Gas Company) a pipeline to service the dedicated area. The

contracts were entered into at a time when Consumers' gas supplies were in jeopardy and a gas shortage was looming.

It is undisputed that the producers were unwilling to enter into long-term contracts without some protection from possible inflation. Consequently, the parties to the contracts negotiated a price redetermination clause, article IX. Article IX required the contract price to be redetermined in 1976, 1981, and 1986, under a formula which was based on the initial contract price, Consumers' interstate cost of gas in the year preceeding the price redetermination, and Consumers' 1970 interstate gas cost. During the period of the first two redeterminations, a time of rising prices, the contract formula yielded a price that was almost always below prevailing market prices. The instant case arises out of the 1986 redetermination, a time of falling market prices.

The redetermined contract prices in 1976 and 1981 were approved by the PSC. The 1981 redetermination resulted in a price of $2.5658 per thousand cubic feet (Mcf), which was the contract price when the 1986 redetermination was sought. In 1986, the contract formula yielded a price of $4.8644 Mcf. When Consumers sought approval of the 1986 redetermined price of $4.8644 per Mcf, the market price was generally in the area of $2.50 per Mcf. The PSC found the 1986 redetermined price "unreasonable" and rejected Consumers' application. The PSC's decision was based on the "large gap between current market prices and the price requested by Consumers."

The producers challenge the PSC's decision on numerous grounds. They claim the PSC does not have authority under 1929 PA 9 (Act 9), MCL 483.101 *et seq.*; MSA 22.1311 *et seq.*, to approve contract price changes based on consideration of

what is "reasonable" in the interest of the general public; rather, Act 9 was intended to protect producers such as appellants. The producers argue that the PSC was never granted authority to regulate the prices they charge for their gas, and that the PSC's action constituted an unconstitutional infringement of their contract rights. Assuming the PSC had the authority it exercised, the producers contend the PSC acted unreasonably, arbitrarily, or capriciously because the PSC considered, among other things, other gas prices which were not based on comparable long-term contracts covering comparable acreage; because the PSC decision did not take into account the reliability of supply provided by appellants' contracts, the historical context in which the contracts were entered or the fact that for many years the contracts provided for payment of less than market price; and because the PSC decision was improperly based on "incremental" interstate prices which did not account for certain fixed charges that cost Consumers over $170 million per year.

The PSC takes the position that Act 9 is broad enough in scope to provide authority for its review of prices based on "reasonableness" and that the 1986 redetermined price submitted by Consumers was unreasonably high. The PSC contends appellants cannot show that the PSC's decision was unlawful or unreasonable since the criteria it considered were appropriate and led to but one conclusion.

Appellate review of PSC orders is narrow. Our standard of review is whether the PSC's decision is lawful and supported by competent, material, and substantial evidence on the whole record. Const 1963, art 6, § 28. Under MCL 462.25; MSA 22.44, all rates, fares, charges, classification and joint rates, regulations, practices, and services pre-

scribed by the PSC are presumed, prima facie, to be lawful and reasonable. *Michigan Consolidated Gas Co v Public Service Comm,* 389 Mich 624; 209 NW2d 210 (1973). The party attacking an order of the PSC must prove by clear and satisfactory evidence that the order complained of is unlawful or unreasonable. MCL 462.26; MSA 22.45; *City of Lansing v Public Service Comm,* 330 Mich 608; 48 NW2d 133 (1951); *Attorney General v Public Service Comm,* 161 Mich App 506, 515; 411 NW2d 469 (1987), lv den 429 Mich 879 (1987). A reviewing court gives due deference to the PSC's administrative expertise and is not to substitute its judgment for that of the PSC. *Yankoviak v Public Service Comm,* 349 Mich 641, 648; 85 NW2d 75 (1957); *Building Owners & Managers Ass'n of Metropolitan Detroit v Public Service Comm,* 131 Mich App 504, 517; 346 NW2d 581 (1984), aff'd 424 Mich 494; 383 NW2d 72 (1986). But this does not mean that courts abandon or delegate their responsibility to interpret legislative intent. *General Motors Corp v Erves,* 395 Mich 604, 620-621; 236 NW2d 432 (1975).

The PSC possesses no "common law" powers; it is a creature of the Legislature and all of its authority must be found in statutory enactments. *Union Carbide Corp v Public Service Comm,* 431 Mich 135, 146; 428 NW2d 322 (1988); *Huron Portland Cement Co v Public Service Comm,* 351 Mich 255, 262; 88 NW2d 492 (1958). Generally, a statute which grants power to an administrative agency is to be strictly construed. *Mason Co Civic Research Council v Mason Co,* 343 Mich 313, 326; 72 NW2d 292 (1955). Administrative authority must be affirmatively or plainly granted, for doubtful power does not exist. *Mason Civic Council, supra* at 326-327; *Taylor v Michigan Public Utilities Comm,* 217 Mich 400, 402-403; 186 NW 485 (1922). See gener-

ally 3 Sands, Sutherland Statutory Construction (4th ed), § 65.02, p 221.

The principal issue raised concerns the jurisdiction of the PSC under Act 9 to regulate prices paid for natural gas by Consumers to producers such as appellants. The PSC claims authority to regulate the price Consumers may pay under its contracts with appellants by virtue of the second sentence of § 10 of Act 9, MCL 483.110; MSA 22.1320.

Another panel of this Court was recently faced with the same issue regarding the PSC's authority under Act 9. *Antrim Resources v Public Service Comm,* 179 Mich App 603; 446 NW2d 515 (1989). These consolidated cases involved similarly situated gas producers raising arguments similar to those raised by the producers in this case. The *Antrim Resources* panel concluded that the PSC does have the authority to regulate contract price changes under § 10 of Act 9.

We agree with the reasoning and conclusion of the *Antrim Resources* panel that under Act 9 the PSC has jurisdiction to regulate changes and contract prices by way of approving the reasonableness of those prices. Section 10 of Act 9 clearly provides that contract price changes may be made "by application to and approval by" the PSC. And as in *Antrim Resources,* the PSC's actions in this case do not impair or infringe the producers' rights to freely contract. The producers were engaged in an extensively regulated area of commerce and executed their contracts after Act 9 had long been in existence. *Energy Reserves Group, Inc v Kansas Power & Light Co,* 459 US 400, 411, 414; 103 S Ct 697; 74 L Ed 2d 569 (1983); *Home Building & Loan Ass'n v Blaisdell,* 290 US 398, 429-430; 54 S Ct 231; 78 L Ed 413 (1934).

The instant producers also contend, assuming the PSC had the authority it exercised, that the PSC

acted unlawfully in rejecting the 1986 redetermined price which the producers claim was a just and reasonable price. The arguments raised at this point greatly implicate the expertise of the PSC, and we give considerable deference to the PSC's determination of what is a reasonable price.

The producers argue that the PSC failed to adequately consider the nature and previous public benefit of the long-term contracts involved, the reliability of supply provided by the contracts and the large acreage covered by the contracts. A review of the record indicates that all of these factors were ably brought to the attention of the PSC through exhibits and testimony. It was for the PSC to weigh the varying testimony on these points in determining whether the applied-for redetermined price was reasonable. *Great Lakes Steel Div of National Steel Corp v Public Service Comm,* 130 Mich 470, 481; 344 NW2d 321 (1983), lv den 419 Mich 895 (1984). We do not believe the PSC had to base its determination on facts or circumstances identical to those of the producers. Accepting such an argument would ignore the administrative expertise embodied by the PSC.

We similarly defer to the PSC in its reliance on evidence of current° intrastate gas prices which were not based on long-term contracts and on evidence of "incremental" interstate gas prices. The incremental interstate price eliminated certain substantial fixed charges which had to be paid in order to purchase gas from an interstate pipeline. Although the incremental interstate price and the current intrastate price are not based on factors identical to those underlying the producers' redetermined contract price, it was not unreasonable for the PSC to consider those prices. That is the type of evidence the PSC is particularly

equipped to weigh. *Ass'n of Businesses Advocating Tariff Equity v Public Service Comm,* 174 Mich App 63, 71; 435 NW2d 766 (1989); *Building Owners & Managers Ass'n of Metropolitan Detroit v Public Service Comm,* 131 Mich App 504, 517-518; 346 NW2d 581 (1984), aff'd 424 Mich 494; 383 NW2d 72 (1986).

The producers have failed to meet their burden of proving that the PSC's decision was unlawful or unsupported by competent, material, and substantial evidence.

The initial PSC order and the denial of Amoco's application for rehearing are affirmed. No costs, a public question being involved.