*In re* APPLICATION OF CONSUMERS ENERGY COMPANY
FOR AUTHORITY TO IMPLEMENT A GAS COST
RECOVERY PLAN AND FACTORS

Docket No. 267194. Submitted December 12, 2007, at Lansing. Decided
    January 15, 2008. Approved for publication April 10, 2008, at 9:00
    a.m.

    Consumers Energy Company filed an application in the Public
        Service Commission (PSC) for approval of its gas cost recovery
        (GCR) plan and factors for the 12-month period ending March 31,
        2006. Consumers sought to use a base GCR factor and to adjust the
        factor quarterly on the basis of the gas commodity prices on the
        New York Mercantile Exchange (NYMEX). Consumers, the PSC
        staff, the Attorney General, and the Residential Ratepayers Con-
        sortium thereafter submitted a settlement agreement to the PSC
        that provided a base GCR factor, which was subject to any change
        resulting from the use of the quarterly adjustment mechanism and
        limited to a certain maximum increase. The agreement provided
        that Consumers' GCR plan should be approved and that Consum-
        ers was not waiving its right to reopen the case in accordance with
        MCL 460.6h(10). The Michigan Community Action Agency Asso-
        ciation (MCAAA) filed a statement of nonobjection. The PSC did
        not issue a final order approving the agreement. Consumers later
        filed an application to reopen the case, claiming a significant
        change in the circumstances as a result of higher gas prices
        following hurricanes that struck the coast of the Gulf of Mexico.
        The PSC granted the application and set an expedited schedule in
        an order dated October 6, 2005. On November 30, 2005, after a
        hearing referee held a contested-case hearing, the PSC entered an
        order by which it approved the settlement agreement, approved an
        increased maximum GCR factor, denied GCR contingent factor
        increases for the balance of the plan year, and directed Consumers
        to propose in its next GCR plan filing a method to recoup any
        underrecovery. The PSC rejected the contention by the MCAAA
        that Consumers was required to give notice of its application to
        reopen proceedings to customers in its service area. The PSC
        concluded that when the matter was reopened, the parties were
        provided reasonable notice containing the information required by
        MCL 24.271 for a contested-case hearing and that that notice,

coupled with the October 6, 2005, order, was sufficient. The MCAAA appealed from the October 6, 2005, and November 30, 2005, orders.

The Court of Appeals *held*:

1. The notice published by the PSC when Consumers filed its original application for approval of its GCR plan complied with MCL 460.6a. MCL 460.6h(10) states that a reopened GCR plan case is to be conducted as a contested case pursuant to the Administrative Procedures Act (APA), MCL 24.201 *et seq.* Subsection 6h(10) does not specify that the notice required by § 6a must be provided again after the case is reopened. The PSC's interpretation and application of § 6h(10) is reasonable and entitled to deference.

2. The assertions of the MCAAA that the PSC erred in allowing Consumers to reopen the case pursuant to § 6h(10) and that Consumers did not file an adequate revised GCR plan must be rejected.

3. The PSC was entitled to rely on the evidence submitted by Consumers to support its revised GCR plan.

4. MCL 460.6h(6) authorizes the PSC to set a GCR factor that incorporates a specific amount that is contingent on future events. The use of the NYMEX price index to aid in setting GCR factors did not violate the statute.

5. No due process violations occurred in this matter. The orders appealed from are lawful, reasonable, and supported by the requisite evidence.

Affirmed.

*Clark Hill PLC* (by *Don L. Keskey*) for the Michigan Community Action Agency Association.

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, and *David A. Voges, Michael A. Nickerson*, and *Patricia S. Barone*, Assistant Attorneys General, for the Public Service Commission.

*H. Richard Chambers* for Consumers Energy Company.

Before: DONOFRIO, P.J., and SAWYER and CAVANAGH, JJ.

PER CURIAM. The Michigan Community Action Agency Association (MCAAA)[1] appeals from orders entered on October 6, 2005, and November 30, 2005, by the Public Service Commission (PSC) reopening this matter and approving the application for a gas cost recovery (GCR) plan and factors filed by Consumers Energy Company (Consumers). We affirm.

### I. FACTS AND UNDERLYING PROCEEDINGS

On December 29, 2004, Consumers filed an application requesting approval of its GCR plan and factors for the 12-month period ending March 31, 2006.[2] Consumers sought to use a base GCR factor of $6.9796 per

---

[1] The MCAAA is a nonprofit corporation whose members are Community Action Agencies (CAAs). These CAAs operate in every county in Michigan and carry out designated functions under the Michigan Economic and Social Opportunity Act, MCL 400.1101 *et seq.* The CAAs serve low-income persons who are dealing with energy issues.

[2] A "gas cost recovery clause" is "an adjustment clause in the rates or rate schedule of a gas utility which permits the monthly adjustment of rates for gas in order to allow the utility to recover the booked costs of gas sold by the utility if incurred under reasonable and prudent policies and practices." MCL 460.6h(1)(b). A "GCR factor" is "that element of the rates to be charged for gas service to reflect gas costs incurred by a gas utility and made pursuant to a gas cost recovery clause incorporated in the rates or rate schedules of a gas utility." MCL 460.6h(1)(c). A gas utility is required to file a GCR plan for a 12-month period, known as a GCR plan year, not less than three months before the beginning of the 12-month period specified in the plan. The plan must include a description of the utility's "expected sources and volumes" of gas supply, the "changes in the cost of gas anticipated over a future 12-month period," and a request for a specific GCR factor for each month. The plan must also include a description of "all major contracts and gas supply arrangements entered into by the utility for obtaining gas during the specified 12-month period." This description must include "the price of the gas, the duration of the contract or arrangement, and an explanation or description of any other term or provision as required by the commission[,]" as well as the utility's evaluation of the reasonableness and prudence of its plan. MCL 460.6h(3).

thousand cubic feet (Mcf) to compute bills for retail customers for the period April 2005 through March 2006, and to adjust the GCR factor quarterly on the basis of the gas commodity prices on the New York Mercantile Exchange (NYMEX).

On June 17, 2005, Consumers, the PSC staff, the Attorney General (AG), and the Residential Ratepayers Consortium submitted a settlement agreement to the PSC. The agreement, to which the MCAAA filed a statement of nonobjection: provided that Consumers could charge $6.976 per Mcf as a base GCR factor for the 2005-2006 plan year, subject to any change resulting from use of the specified quarterly adjustment mechanism; limited the maximum NYMEX increase that could be considered for purposes of calculating the contingency adjustment to $2 per million British thermal units (MMBtu); provided that Consumers' GCR plan should be approved; and provided that the agreement was not to be deemed a waiver of Consumers' right to reopen the case in accordance with MCL 460.6h(10). The PSC did not issue a final order approving the agreement.

On September 30, 2005, Consumers filed an application to reopen the case, claiming that circumstances had changed significantly since the settlement agreement was reached, and that natural gas prices had increased dramatically following the hurricanes that struck the coast of the Gulf of Mexico. Consumers contended that the cost increases, if left unaddressed, could cause it to incur a GCR underrecovery in excess of $100 million through March 2006, and that, as a result, the GCR factors for the 2006-2007 plan year would have to be increased by the amount of any underrecovery. The application proposed that the base GCR factor be raised from $6.9796 per Mcf to $9.1108 per Mcf, and

that the maximum NYMEX increase that could be considered for purposes of the adjustment mechanism be increased to $3 per MMBtu no later than January 1, 2006. On October 6, 2005, the PSC granted the application and set an expedited schedule. A hearing referee conducted a contested-case hearing at which direct testimony was introduced, an opportunity to cross-examine witnesses was given, and exhibits were introduced.

On November 30, 2005, the PSC approved the settlement agreement, approved a new maximum GCR factor of $10.10 per Mcf for the billing period of December 2005 through March 2006, denied GCR contingent factor increases for the balance of the plan year, and directed Consumers to make a specific proposal in its next GCR plan filing for a method to recoup the underrecovery, if any, for the period December 2005 through March 2006. The PSC rejected the MCAAA's contention that Consumers was required to give notice of its application to reopen proceedings to customers in its service territory, concluding that when the instant case was reopened, the parties were provided reasonable notice containing the information required by MCL 24.271 for a contested-case hearing, and that that notice, coupled with the October 6, 2005, order, was sufficient under the applicable statutes.

## II. STANDARD OF REVIEW

The standard of review for PSC orders is narrow and well defined. Pursuant to MCL 462.25, all rates, fares, charges, classification and joint rates, regulations, practices, and services prescribed by the PSC are presumed, prima facie, to be lawful and reasonable. *Michigan Consolidated Gas Co v Pub Service Comm*, 389 Mich 624, 635-636; 209 NW2d 210 (1973). A party aggrieved by an order of the PSC has the burden of proving by

clear and convincing evidence that the order is unlawful or unreasonable. MCL 462.26(8). To establish that a PSC order is unlawful, the appellant must show that the PSC failed to follow a mandatory statute or abused its discretion in the exercise of its judgment. *In re MCI Telecom Complaint*, 460 Mich 396, 427; 596 NW2d 164 (1999). An order is unreasonable if it is not supported by the evidence. *Associated Truck Lines, Inc v Pub Service Comm*, 377 Mich 259, 279; 140 NW2d 515 (1966).

A final order of the PSC must be authorized by law and be supported by competent, material, and substantial evidence on the whole record. Const 1963, art 6, § 28; *Attorney General v Pub Service Comm*, 165 Mich App 230, 235; 418 NW2d 660 (1987).

We give due deference to the PSC's administrative expertise, and will not substitute our judgment for that of the PSC. *Attorney General v Pub Service Comm No 2*, 237 Mich App 82, 88; 602 NW2d 225 (1999). We give great weight to any reasonable construction of a regulatory scheme that the PSC is empowered to administer, *Champion's Auto Ferry, Inc v Pub Service Comm*, 231 Mich App 699, 708; 588 NW2d 153 (1998), but we may not abandon our responsibility to interpret statutory language and legislative intent. *Miller Bros v Pub Service Comm*, 180 Mich App 227, 232; 446 NW2d 640 (1989). Whether the PSC has exceeded the scope of its authority is a question of law that we review de novo. *In re Complaint of Pelland Against Ameritech Michigan*, 254 Mich App 675, 682; 658 NW2d 849 (2003).

### III. ANALYSIS

#### A. ADEQUACY OF NOTICE

The MCAAA argues that the PSC's October 6, 2005, and November 30, 2005, orders are unlawful because

they failed to adhere to the requirement in MCL 460.6a that notice and an opportunity for a full and complete hearing must be provided when a utility seeks a rate increase. The MCAAA asserts that the process commenced by the October 6, 2005, order did not require Consumers to provide notice to customers within its service territory, and provided no realistic opportunity for a full and complete hearing on Consumers' request for a rate increase. We disagree.

The primary goal of statutory interpretation is to ascertain and give effect to the intent of the Legislature. *Frankenmuth Mut Ins Co v Marlette Homes, Inc*, 456 Mich 511, 515; 573 NW2d 611 (1998). If the plain and ordinary meaning of statutory language is clear, judicial construction is neither necessary nor permitted. *Cherry Growers, Inc v Agricultural Marketing & Bargaining Bd*, 240 Mich App 153, 166; 610 NW2d 613 (2000).

MCL 460.6a provides, in pertinent part:

> (1) When a finding or order is sought by a gas or electric utility to increase its rates and charges or to alter, change, or amend any rate or rate schedules, the effect of which will be to increase the cost of services to its customers, notice shall be given within the service area to be affected. The utility shall place in evidence facts relied upon to support the utility's petition or application to increase its rates and charges, or to alter, change, or amend any rate or rate schedules. After first having given notice to the interested parties within the service area to be affected and affording interested parties a reasonable opportunity for a full and complete hearing, the commission, after submission of all proofs by any interested party, may in its discretion and upon written motion by the utility make a finding and enter an order granting partial and immediate relief. A finding or order shall not be authorized or approved ex parte, nor until the commission's technical staff has made an investigation and report. An alteration or amendment in rates or rate schedules applied for by a public utility that

will not result in an increase in the cost of service to its customers may be authorized and approved without notice or hearing. There shall be no increase in rates based upon changes in cost of fuel or purchased gas unless notice has been given within the service area to be affected, and there has been an opportunity for a full and complete hearing on the cost of fuel or purchased gas. The rates charged by any utility pursuant to an automatic fuel or purchased gas adjustment clause shall not be altered, changed, or amended unless notice has been given within the service area to be affected, and there has been an opportunity for a full and complete hearing on the cost of the fuel or purchased gas.

(2) The commission shall adopt rules and procedures for the filing, investigation, and hearing of petitions or applications to increase or decrease utility rates and charges as the commission finds necessary or appropriate to enable it to reach a final decision with respect to petitions or applications within a period of 9 months from the filing of the petitions or applications. The commission shall not authorize or approve adjustment clauses that operate without notice and an opportunity for a full and complete hearing, and all such clauses shall be abolished. The commission may hold a full and complete hearing to determine the cost of fuel, purchased gas, or purchased power separately from a full and complete hearing on [a] general rate case and may be held concurrently with the general rate case. The commission shall authorize a utility to recover the cost of fuel, purchased gas, or purchased power only to the extent that the purchases are reasonable and prudent. As used in this section:

(a) "Full and complete hearing" means a hearing that provides interested parties a reasonable opportunity to present and cross-examine evidence and present arguments relevant to the specific element or elements of the request that are the subject of the hearing.

Consumers filed an application for approval of its GCR plan, and the PSC published a notice of hearing for customers within Consumers' service territory. The

notice stated that Consumers sought approval of a base GCR factor of $6.9796 per Mcf, but noted that that figure could be adjusted higher on the basis of NYMEX gas prices. It is undisputed that this notice complied with MCL 460.6a.

The parties' settlement agreement provided that Consumers could charge $6.976 per Mcf as a base GCR factor for the 2005-2006 plan year, subject to any change resulting from use of the specified quarterly adjustment mechanism. The settlement agreement limited the maximum NYMEX increase that could be considered for purposes of calculating the contingency adjustment to $2 per MMBtu. Thus, the settlement agreement, to which MCAAA did not object, authorized Consumers to implement a GCR factor higher than that specified in the original notice of hearing.

Subsequently, on September 30, 2005, Consumers sought to reopen the case. The PSC granted the motion to reopen the case pursuant to MCL 460.6h(10). That statute provides:

> Not less than 3 months before the beginning of the third quarter of the 12-month period, the utility may file a revised gas cost recovery plan which shall cover the remainder of the 12-month period. Upon receipt of the revised gas cost recovery plan, the commission shall reopen the gas supply and cost review. In addition, the commission may reopen the gas supply and cost review on its own motion or on the showing of good cause by any party if at least 6 months have elapsed since the utility submitted its complete filing and if there are at least 60 days remaining in the 12-month period under consideration. A reopened gas supply and cost review shall be conducted as a contested case pursuant to chapter 4 of Act No. 306 of the Public Acts of 1969, and in accordance with subsections (3), (6), (8), and (9).

The MCAAA's assertion, that the PSC's orders of October 6, 2005, and November 30, 2005, are unlawful

because a notice of hearing comporting with MCL 460.6a was not issued after the case was reopened, is without merit. The PSC had not issued a final order approving a GCR plan when it granted the motion to reopen the case. MCL 460.6h(10) specifically states that a reopened GCR plan case is to be conducted as a contested case pursuant to the Administrative Procedures Act (APA), MCL 24.201 *et seq*. Section 71 of the APA, MCL 24.271, sets out the requirements for notice and hearing in a contested case, and provides, in pertinent part, as follows:

> (1) The parties in a contested case shall be given an opportunity for a hearing without undue delay.

> (2) The parties shall be given a reasonable notice of the hearing, which notice shall include:

> (a) A statement of the date, hour, place, and nature of the hearing. Unless otherwise specified in the notice the hearing shall be held at the principal office of the agency.

> (b) A statement of the legal authority and jurisdiction under which the hearing is to be held.

> (c) A reference to the particular sections of the statutes and rules involved.

> (d) A short and plain statement of the matters asserted. If the agency or other party is unable to state the matters in detail at the time the notice is given, the initial notice may state the issues involved. Thereafter on application the agency or other party shall furnish a more definite and detailed statement on the issues.

The PSC concluded that the notice the parties received following the grant of Consumers' motion to reopen the case complied with MCL 24.271, and thus met the requirements of MCL 460.6h(10). MCL 460.6h(10) does not specify that the notice to customers within the utility's service territory required by MCL 460.6a must be provided again after a case is reopened; we conclude

that the PSC's interpretation and application of MCL 460.6h(10) is reasonable and entitled to deference. *In re Procedure & Format for Filing Tariffs Under the Telecom Act*, 210 Mich App 533, 538; 534 NW2d 194 (1995). Furthermore, the hearing referee conducted a contested-case hearing at which direct testimony was introduced, opportunity was given to cross-examine witnesses, and exhibits were introduced. It was only after this hearing was completed that the PSC issued its final order approving the settlement agreement, approving a new maximum GCR factor for the billing period of December 2005 through March 2006, and denying GCR contingent factor increases for the balance of the plan year.

In sum, customers in Consumers' service area received notice that Consumers was seeking a new GCR factor that could be adjusted to a figure higher than that provided in the original notice. Ultimately, the PSC approved a higher factor, but not until after a full contested-case hearing was held. The notice required by MCL 460.6a was provided at the inception of the case; the procedure required by MCL 460.6h(10) was followed after the case was reopened. We defer to the PSC's construction of this regulatory scheme. *Champion's Auto Ferry, supra,* 231 Mich App 708.

### B. COMPLIANCE WITH MCL 460.6h

The MCAAA argues that the PSC's orders of October 6, 2005, and November 30, 2005, are unlawful and unreasonable because they violate various provisions of § 6h, MCL 460.6h, of 1982 PA 304 (Act 304). Consumers' original GCR plan sought a rate increase to a level that would not exceed $8.7296 per Mcf under any circumstances. However, Consumers' motion to reopen the case sought a rate increase above that figure based

solely on the NYMEX price index at a time when the index was artificially high as a result of the Gulf Coast hurricanes. The MCAAA argues that the PSC granted Consumers a rate increase to a maximum of $10.10 per Mcf for the billing period of December 2005 through March 2006, without conducting a full and complete hearing as required by MCL 460.6a, and without requiring Consumers to establish that the plan was reasonable and prudent and that Consumers had taken all appropriate steps to minimize the cost of gas, as required by MCL 460.6h(3), (5), and (6). The MCAAA additionally claims that the use of the NYMEX price index, rather than Consumers' own actual or projected cost of gas, does not allow for the evaluation of the reasonableness and prudence of Consumers' GCR plan, and does not demonstrate that Consumers made every effort to minimize the cost of gas. The MCAAA contends that the plain language of MCL 460.6h(6) does not authorize the use of a market index such as the NYMEX price index. It also contends that the PSC did not enter a temporary order in this case; thus, MCL 460.6h(8) and (9), which deal with temporary orders and how a utility may act when such an order is issued, are inapplicable here.

Moreover, the MCAAA asserts that Consumers' motion to reopen its GCR plan case did not comply with MCL 460.6h(10), which specifies that a utility must file a "revised" GCR plan covering the remainder of the plan year. The MCAAA claims that Consumers did not file an adequate revised plan, but simply sought to raise rates for the balance of the plan year on the basis of NYMEX price index changes, and sought to self-implement future rate increases on the basis of a NYMEX-based adjustment clause. Furthermore, the MCAAA argues that the PSC erred in allowing Consumers to "reopen" its GCR plan case in light of the fact

that no final order had been issued. It claims that the PSC's decision to reopen this case was contrary to its decision in Case No. U-13902, see *Michigan Community Action Agency Ass'n v Pub Service Comm,* unpublished opinion per curiam of the Court of Appeals, issued June 19, 2007 (Docket No. 263262), in which the PSC concluded that proofs that had not yet been closed need not be reopened.

We hold that the PSC's orders did not violate MCL 460.6h, and are not unlawful.

MCL 460.6h provides, in pertinent part:

> (3) In order to implement the gas cost recovery clause established pursuant to subsection (2), a utility annually shall file, pursuant to procedures established by the commission, if any, a complete gas cost recovery plan describing the expected sources and volumes of its gas supply and changes in the cost of gas anticipated over a future 12-month period specified by the commission and requesting for each of those 12 months a specific gas cost recovery factor. The plan shall be filed not less than 3 months before the beginning of the 12-month period covered by the plan. The plan shall describe all major contracts and gas supply arrangements entered into by the utility for obtaining gas during the specified 12-month period. The description of the major contracts and arrangements shall include the price of the gas, the duration of the contract or arrangement, and an explanation or description of any other term or provision as required by the commission. The plan shall also include the gas utility's evaluation of the reasonableness and prudence of its decisions to obtain gas in the manner described in the plan, in light of the major alternative gas supplies available to the utility, and an explanation of the legal and regulatory actions taken by the utility to minimize the cost of gas purchased by the utility.

* * *

(5) If a utility files a gas cost recovery plan and a 5-year forecast as provided in subsections (3) and (4), the commission shall conduct a proceeding, to be known as a gas supply and cost review, for the purpose of evaluating the reasonableness and prudence of the plan, and establishing the gas cost recovery factors to implement a gas cost recovery clause incorporated in the rates or rate schedule of the gas utility. The gas supply and cost review shall be conducted as a contested case pursuant to chapter 4 of Act No. 306 of the Public Acts of 1969.

(6) In its final order in a gas supply and cost review, the commission shall evaluate the reasonableness and prudence of the decisions underlying the gas cost recovery plan filed by the gas utility pursuant to subsection (3), and shall approve, disapprove, or amend the gas cost recovery plan accordingly. In evaluating the decisions underlying the gas cost recovery plan, the commission shall consider the volume, cost, and reliability of the major alternative gas supplies available to the utility; the cost of alternative fuels available to some or all of the utility's customers; the availability of gas in storage; the ability of the utility to reduce or to eliminate any sales to out-of-state customers; whether the utility has taken all appropriate legal and regulatory actions to minimize the cost of purchased gas; and other relevant factors. The commission shall approve, reject, or amend the 12 monthly gas cost recovery factors requested by the utility in its gas cost recovery plan. The factors ordered shall be described in fixed dollar amounts per unit of gas, but may include specific amounts contingent on future events, including proceedings of the federal energy regulatory commission or its successor agency.

* * *

(8) The commission, on its own motion or the motion of any party, may make a finding and enter a temporary order granting approval or partial approval of a gas cost recovery plan in a gas supply and cost recovery review, after first having given notice to the parties to the review, and after having afforded to the parties to the review a reasonable

opportunity for a full and complete hearing. A temporary order made pursuant to this subsection shall be considered a final order for purposes of judicial review.

(9) If the commission has made a final or temporary order in a gas supply and cost review, the utility may each month incorporate in its rates for the period covered by the order any amounts up to the gas cost recovery factors permitted in that order. If the commission has not made a final or temporary order within 3 months of the submission of a complete gas cost recovery plan, or by the beginning of the period covered in the plan, whichever comes later, or if a temporary order has expired without being extended or replaced, then pending an order which determines the gas cost recovery factors, a gas utility may each month adjust its rates to incorporate all or a part of the gas cost recovery factors requested in its plan. Any amounts collected under the gas cost recovery factors before the commission makes its final order shall be subject to prompt refund with interest to the extent that the total amounts collected exceed the total amounts determined in the commission's final order to be reasonable and prudent for the same period of time.

### 1. APPLICATION OF MCL 460.6h(10)

Initially, we reject the MCAAA's assertions that the PSC erred in allowing Consumers to "reopen" this case pursuant to MCL 460.6h(10), and that Consumers did not file an adequate "revised" GCR plan as a prerequisite to reopening the case, as required by MCL 460.6h(10).

The PSC did not enter either a temporary or a final order approving the parties' settlement agreement, but no further proceedings took place. The filing of a motion to reopen, which was supported by revised testimony from four witnesses and revised exhibits, was the only method, given the posture of the case, by which Consumers could present additional evidence to support its request to raise rates for the balance of the plan

period. The plain language of MCL 460.6h(10) indicates that the decision to grant the motion was within the discretion of the PSC.[3] The PSC's decision to do so is entitled to deference. *Public Service Comm No 2, supra,* 237 Mich App 88.

The MCAAA's assertion that the PSC's decision to reopen this case pursuant to MCL 460.6h(10) is inconsistent with its decision in another case is without merit. In *Michigan Community Action Agency Ass'n, supra,* the MCAAA contended that the utility, Michigan Consolidated Gas Company (MichCon), was required to file a motion to reopen the case and seek a new contested-case hearing when it offered new evidence to support its motion for a temporary order for an increased GCR factor. At the time MichCon filed the motion, the parties had filed initial testimony and exhibits, but the cross-examination portion of the contested-case hearing had not yet taken place. The PSC concluded that no need existed to reopen proofs that had not yet closed; therefore, the fact that Mich-Con did not move to reopen the case pursuant to MCL 460.6h(10) did not render the implementation of a new GCR factor improper.[4] In the instant case, no hearing had been held, and no method other than a motion to reopen existed to allow Consumers to present evidence. We defer to the PSC's application of the reopener provision in MCL 460.6h(10). *Champion's Auto Ferry, supra,* 231 Mich App 708.

Finally, the MCAAA's assertion that Consumers did not file an adequate "revised" GCR plan that would

---

[3] Consumers filed the motion to reopen the case more than six months after it submitted its initial filing, and with at least 60 days remaining in the 12-month plan period.

[4] In *Michigan Community Action Agency Ass'n, supra* at 7-8, this Court affirmed the PSC's decision on this issue.

allow for the case to be reopened is unsubstantiated. The MCAAA's assertion that the motion to reopen was simply "a 'bare-bones' filing seeking rate increases late in the Plan year based upon NYMEX national index prices" is contradicted by the revised testimony and extensive revised exhibits filed in support of the motion. MCL 460.6h(10) does not state that a utility seeking to reopen a GCR plan case must file an entirely new plan. Here, Consumers revised its plan to support its request to increase rates on the basis of NYMEX index prices. The MCAAA does not indicate with any specificity what further materials Consumers should have or could have included in its motion and supporting documents. We conclude that the PSC's conclusion that the filing was sufficient under MCL 460.6h(10) is entitled to deference. *Champion's Auto Ferry, supra,* 231 Mich App 708.

### 2. APPLICATION OF MCL 460.6h(3), (5), (6), (8), AND (9)

The PSC has broad authority to set just and reasonable rates and may, in the exercise of its discretion, determine what factors are relevant in a particular case. *Attorney General v Pub Service Comm*, 231 Mich App 76, 79; 585 NW2d 310 (1998); *Attorney General v Pub Service Comm # 1*, 133 Mich App 719, 725-726; 349 NW2d 539 (1984). The PSC is not bound by any particular ratemaking method and can make pragmatic adjustments in order to respond to the particular circumstances of any given case. *Attorney General v Pub Service Comm*, 189 Mich App 138, 147; 472 NW2d 53 (1991).

The MCAAA's argument that the PSC's orders of October 6, 2005, and November 30, 2005, are unlawful because the PSC did not require Consumers to comply with the requirement in MCL 460.6h(3) that a GCR plan contain an "evaluation of the reasonableness and

prudence" of the plan to raise rates on the basis of the NYMEX price index and "an explanation of the legal and regulatory actions taken by the utility to minimize the cost of gas purchased by the utility" is without merit. The amended testimony and exhibits submitted by witnesses for Consumers and the PSC staff after the case was reopened established that the use of the NYMEX price index was widespread in the industry, both for long-term and short-term contracts, that the NYMEX price index had a definite effect on Consumers' costs, and that Consumers did not make a profit on the gas commodity itself. The PSC was entitled to rely on this evidence to find that Consumers established that its revised GCR plan was reasonable and prudent and minimized costs, notwithstanding the existence of contradictory evidence. *Great Lakes Steel v Pub Service Comm*, 130 Mich App 470, 481-482; 344 NW2d 321 (1983).

The MCAAA's argument that the PSC's order of November 30, 2005, is unlawful because it granted Consumers a rate increase after an expedited hearing and without providing the requisite notice or affording all interested parties the opportunity for a full and complete hearing, as required by MCL 460.6h(5), is without merit. For the reasons we stated earlier, we conclude that the notice provided to the parties and the public after the case was reopened met all statutory requirements. The PSC held a contested-case hearing that complied with MCL 24.271 before issuing its November 30, 2005, order. The MCAAA's assertion that the expedited schedule precluded adequate discovery or the ability to prepare responsive testimony is unsubstantiated.

MCL 460.6h(6) provides that GCR factors approved by the PSC "shall be described in fixed dollar amounts

per unit of gas, but may include specific amounts contingent on future events . . . ." The PSC's order of November 30, 2005, approved a maximum GCR factor of $10.10 per Mcf for the billing period of December 2005 through March 2006, but suspended the contingency mechanism for that period. It seems apparent that the NYMEX index cost of gas is a future event on which the price of gas may be contingent. A base GCR factor is a "fixed dollar" amount. The NYMEX price index itself is not a future event; however, a rise in that index is a future event. The PSC has approved contingent mechanisms based on changes in the NYMEX index cost of gas.[5] We defer to the PSC's longstanding interpretation of statutory language. *In re Procedure & Format for Filing Tariffs, supra*, 210 Mich App 538.

The MCAAA's argument that MCL 460.6h(8), which states that the PSC may enter a temporary order in a GCR case after giving interested parties "a reasonable opportunity for a full and complete hearing," and MCL 460.6h(9), which states that if the PSC has not entered a final or temporary order within a specified period after the filing of a GCR case, the utility may self-implement requested rate adjustments, are inapplicable in this case is correct, but again is irrelevant to the orders challenged on appeal. The PSC did not enter a temporary order in this case, and suspended the contingency mechanism for the balance of the plan period. Consumers had no opportunity to self-implement rate increases.

---

[5] In *Michigan Community Action Agency Ass'n, supra* at 10-11, this Court approved the use of a contingent mechanism based on the NYMEX index. This unpublished opinion lacks precedential value, MCR 7.215(C)(1), but we consider its analysis to be persuasive. See *In re Application of Indiana Michigan Power Co*, 275 Mich App 369, 380; 738 NW2d 289 (2007).

### C. USE OF THE NYMEX PRICE INDEX

The MCAAA argues that the PSC's order of November 30, 2005, which grants Consumers' request for an increased GCR factor based solely on a spike in the NYMEX price index, is unlawful and unreasonable because it exceeds the PSC's legislative authority and is inconsistent with the legislative intent and purposes of Act 304. Act 304 was adopted in 1982, and amended MCL 460.6a(1) to eliminate automatic-adjustment clauses that operated to raise rates without notice and the opportunity for a full and complete hearing. The MCAAA asserts that the PSC does not have the legislative authority to use a tool such as the NYMEX price index as a basis for setting GCR factors. Various provisions of Act 304, in particular MCL 460.6a and MCL 460.6h, established a process by which a utility must submit a comprehensive, yearly GCR plan and a five-year forecast that are reasonable and prudent and that seek to minimize the costs to the utility's customers. The MCAAA asserts that the PSC's decision to set a GCR factor on the basis of a temporary spike in the NYMEX price index relieves the utility of the burden of establishing that its plan is reasonable and prudent and minimizes the cost to customers. We disagree with MCAAA's assertions.

The PSC possesses only that authority granted to it by the Legislature. *Pub Service Comm, supra*, 231 Mich App 78. The statutes that confer power on the PSC must be strictly construed. Authority must be granted by clear and unmistakable language. Words and phrases in the PSC's enabling statutes must be read narrowly and in the context of the statutory scheme. *Consumers Power Co v Pub Service Comm*, 460 Mich 148, 155-159; 596 NW2d 126 (1999).

The order of November 30, 2005, does not exceed the PSC's authority. MCL 460.6h(6) explicitly authorizes

the PSC to set a GCR factor that incorporates a specific amount that is "contingent on future events[.]" The PSC has not taken the position that it is entitled to set a GCR factor that incorporates such an amount without first providing notice and the opportunity for a full and complete hearing as required by MCL 460.6a(1) or MCL 460.6h(10). In the instant case, the PSC disallowed a contingent mechanism.

Furthermore, we reject the MCAAA's assertion that the PSC's decision is inconsistent with the intent and goals of Act 304. The undisputed evidence showed that prices for natural gas had risen dramatically. The PSC was entitled to accept the testimony given by witnesses for Consumers and the PSC staff that prices would remain elevated for some time, notwithstanding contrary testimony given by the MCAAA's witness. *Great Lakes Steel, supra*, 130 Mich App 481-482. In addition, the PSC's decision to allow Consumers to implement an increased GCR factor for the balance of the plan year furthered the recognized goal of charging customers the correct price for gas as near in time as possible to when the gas is used. See *Attorney General v Pub Service Comm*, 235 Mich App 308, 315-316 (opinion by SAWYER, J.), 318 (opinion by MARKMAN, J.); 597 NW2d 264 (1999).

The MCAAA's argument that the use of the NYMEX price index allows a utility such as Consumers to maximize rate collection, contrary to MCL 460.6h(3), is without merit. A utility has no incentive to engage in maximized rate collection, for the reason that any amount overrecovered must be returned to ratepayers, with interest. MCL 460.6h(12), (13), and (15). The use of the NYMEX price index in the establishment of a GCR factor is within the PSC's statutory authority and ratemaking discretion, and is not inconsistent with the intent and purposes of Act 304.

### D. VIOLATION OF DUE PROCESS

The MCAAA argues that MCL 460.6a and MCL 460.6h establish a party's right to notice and a full and complete hearing, as well as the right to present arguments on issues of law, policy, and fact (MCL 24.272[3]), and the right to obtain a proposal for decision (MCL 24.281) and a final decision (MCL 24.285). The MCAAA asserts that the PSC's use of the reopener provision in MCL 460.6h(10) and a truncated hearing process violated prior notice and hearing procedures mandated by MCL 460.6a and MCL 460.6h, and that these statutory violations constituted a violation of the right to procedural due process.[6] We disagree.

We review an unpreserved claim of constitutional error for outcome-determinative plain error. *In re Hildebrant,* 216 Mich App 384, 389; 548 NW2d 715 (1996).

Due process in a civil case requires notice and an opportunity to be heard. See *Vicencio v Jaime Ramirez, MD, PC,* 211 Mich App 501, 504; 536 NW2d 280 (1995). As stated above, the PSC complied with the notice requirements of MCL 460.6a and the requirements of MCL 460.6h.

### IV. CONCLUSION

The PSC's orders of October 6, 2005, and November 30, 2005, are lawful and reasonable, and are supported by the requisite evidence.

Affirmed.

---

[6] The PSC and Consumers assert that the MCAAA's argument concerns the alleged violation of a property right, but the MCAAA maintains that its "due process claims do not relate to confiscation of property claims."