LIMA TWP v BATESON

Docket Nos. 306575 and 306583. Submitted February 6, 2013, at Lansing. Decided September 19, 2013, at 9:00 a.m.

Lima Township brought an action in the Washtenaw Circuit Court against Ernest K. Bateson and Pamela E. Gough-Bahash (now Gough-Bateson), seeking to enjoin them from using their property to store commercial vehicles, materials, and equipment in violation of the Lima Township zoning ordinance. Gough-Bahash in turn filed a complaint for declaratory relief against Lima Township, seeking an order permitting her to keep the items on the property pursuant to both the zoning ordinance and the Right to Farm Act (RTFA), MCL 286.471 *et seq.*, because she and Bateson were developing a tree farm and their property was zoned for agricultural use. The court, Donald E. Shelton, J., granted Lima Township's motion for injunctive relief and granted summary disposition of both cases. Gough-Bahash and Bateson appealed, and the appeals were consolidated.

The Court of Appeals *held*:

1. The trial court erred by granting summary disposition because there were genuine factual issues regarding whether appellants' activities were protected under the RTFA.

2. A party relying on the RTFA as a defense to a nuisance action has the burden to prove by a preponderance of the evidence that the challenged conduct is protected under the act. To successfully assert the defense, a party must prove that the challenged condition or activity constitutes a farm or farm operation and that the farm or farm operation conforms to the generally accepted agricultural and management practices set forth by the Michigan Commission of Agriculture. The trial court erred by failing to make factual findings with regard to these elements.

3. The trial court abused its discretion by excluding the testimony of Robert Pesko, an engineer who would have testified about the type and amount of materials removed from appellants' property, because it erred as a matter of law by concluding that this would not have constituted rebuttal testimony. On remand, the trial court should consider Pesko's testimony before articulating factual findings under the RTFA.

4. Appellants failed to establish that Lima Township denied them equal protection and due process by treating them differently from other similarly situated individuals.

Reversed and remanded for further proceedings; jurisdiction retained.

1. NUISANCE — DEFENSES — RIGHT TO FARM ACT — BURDEN OF PROOF.

A party relying on the Right to Farm Act, MCL 286.471 *et seq.*, as a defense to a nuisance action has the burden to prove by a preponderance of the evidence that the challenged conduct is protected under the act.

2. NUISANCE — DEFENSES — RIGHT TO FARM ACT — ELEMENTS.

To successfully assert the Right to Farm Act as a defense to a nuisance action, a party must prove that the challenged condition or activity constitutes a farm or farm operation and that the farm or farm operation conforms to the generally accepted agricultural and management practices set forth by the Michigan Commission of Agriculture.

3. CONSTITUTIONAL LAW — EQUAL PROTECTION — "CLASSES OF ONE."

A party claiming a violation of the right to equal protection of the law based on being treated as a class of one must establish that he or she was intentionally treated differently from others similarly situated and that there was no rational basis for the difference in treatment; to be considered similarly situated, the party and the comparators must be prima facie identical in all relevant respects or directly comparable in all material respects (US Const, Am XIV; Const 1963, art 1, § 2).

*Reading, Etter & Lillich* (by *Victor L. Lillich*) for Lima Township.

*Baker, Stringer & Garwood, LLP* (by *Thomas L. Stringer*) for Ernest K. Bateson and Pamela Gough-Bahash.

Before: JANSEN, P.J., and WHITBECK and BORRELLO, JJ.

PER CURIAM. In these consolidated appeals, in Docket No. 306575, appellants Ernest Bateson and Pamela Gough-Bahash (Gough) appeal as of right a trial court

order denying appellants' motion for summary disposition and granting appellee Lima Township's motions for summary disposition and injunctive relief. In Docket No. 306583, Gough appeals the same order as of right.[1] For the reasons set forth in this opinion, we reverse and remand for further proceedings.

## I. FACTS AND PROCEEDINGS

On December 23, 2009, Gough, Bateson's wife, purchased approximately 30 acres of land (the property) zoned AG-1 (agricultural) in Lima Township. Shortly thereafter, appellee Lima Township (Lima) filed a complaint[2] for injunctive relief against appellants, alleging improper use of the property and improper storage of commercial vehicles, materials, and equipment on the property. Lima alleged that Bateson was using the property to conduct commercial business operations and store commercial vehicles and equipment.[3] Lima claimed that these uses were not permitted under the Lima Township Zoning Ordinance (LTZO) and were a nuisance per se.

On the same day Lima filed its complaint, Gough filed a complaint[4] for declaratory relief against Lima, alleging that she and Bateson were developing a tree farm on the property, activity that was permitted in the AG-1 zone. Gough alleged that she had certain materials, sup-

---

[1] Although Bateson is not a party in Docket No. 306583, for ease of reference, we will refer to him and Gough as "appellants" throughout this opinion, regardless of which underlying case is being discussed.

[2] Lima's complaint commenced lower court Case No. 10-000368-CZ.

[3] Lima alleged that Bateson was storing the following equipment on the property: "dump trucks, semi truck trailers and tractors, Landscape Solutions pick-up truck, front-end loaders, backhoes, dozers, larger crane and drag line, excavators, large oil/chemical/liquid tank container, dozer tracts, miscellaneous equipment and debris, and landscape material."

[4] Gough's complaint commenced lower court Case No. 10-000373-CZ.

plies, equipment, and vehicles delivered to the property for purposes of preparing the property for the tree farm. Gough requested an order declaring that she was permitted to maintain the equipment on the property.

On August 11, 2010, appellants filed two motions for summary disposition. One motion requested summary disposition under MCR 2.116(C)(7) and (10) as to Gough's complaint for declaratory relief. The other requested summary disposition as to Lima's complaint pursuant to MCR 2.116(C)(7), (8), and (10). Appellants' motions were based on assertions that the activities being conducted on the property were a permitted agricultural use. Specifically, appellants asserted that it was their intent to operate a tree farm, which was permitted under the LTZO and protected by Michigan's Right to Farm Act (RTFA), MCL 286.471 *et seq*. Appellants supported their motions with affidavits in which they both averred that they were in the process of preparing the land for tree farming.

Lima opposed appellants' motions, arguing that appellants were not engaged in legitimate farming activities. Additionally, Lima filed a renewed motion for a preliminary injunction and a request for an evidentiary hearing. Lima also requested leave to amend its complaint and add allegations of ongoing excavation without a special use permit.

The trial court granted Lima's request for leave to file an amended complaint. In regard to Lima's motion for a preliminary injunction and evidentiary hearing, the trial court stated: "Motions for Summary disposition will be heard on October 20, 2010 . . . and assuming motions for summary disposition are not granted, an evidentiary hearing on Plaintiff Lima Township's request for Preliminary injunction shall be heard on November 18, 2010."

Lima filed its amended complaint on September 28, 2010. Shortly thereafter, the trial court entered a stipulated order dismissing Gough's complaint for declaratory relief—Case No. 10-000373-CZ—without prejudice.[5]

On January 26, 2011, Lima filed a trial brief and brief in opposition to appellants' motion for summary disposition. Lima argued that appellants were not engaged in a legitimate farming activity protected under the RTFA. Lima supported its brief with affidavits, photographs, and other documentary evidence and requested that the trial court deny appellants' motion for summary disposition and grant summary disposition in its favor pursuant to MCR 2.116(I)(2).

The trial court held a four-day evidentiary hearing on March 24, May 12, July 28, and July 29, 2011. At the hearing, several farmers from the area testified. This testimony showed that appellants kept heavy equipment on the property including trailers, flatbeds, gravel haulers, bulldozers, pay loaders and cranes. One witness testified that a farmer would want a lot of appellants' equipment. In addition, testimony showed that there were piles of dirt, rocks, asphalt millings, and large excavation sites on the property. Several area farmers testified that trucks regularly came and went from the property and two farmers approximated the number of trucks at 500. Several witnesses testified that appellants planted a number of trees near the front of the property, but other testimony showed that there was no harvestable hay on the property and one area resident with a farming background testified that the

---

[5] The parties stipulated to dismiss Gough's complaint; however, when the trial court entered its final order, it indicated that the order applied to "both cases," and specifically dismissed "Case No. 10-373-CZ." Hence, both cases were presented for appellate review.

property was not desirable for farming. Other evidence showed that appellants were not violating the township's soil erosion ordinance, and the township supervisor testified that there was no claim that appellants were operating a quarry.

Wayne Whitman, the environmental manager for the Right to Farm Program at the Michigan Department of Agriculture and Rural Development (MDOA), also testified at the evidentiary hearing. Whitman inspected the property and reviewed aerial photographs of the property. He testified that some of the photographs depicted ground cover that appeared to be in "some sort of rows" or serving as "some kind of erosion control practice on that ground." However, Whitman could not determine whether any farming was taking place because he did not know what type of vegetation was growing. Whitman testified that vegetation could suggest ongoing farming and that prairie grass and trees could be farm products. Whitman had written a letter after inspecting the property that addressed the RTFA and generally accepted agricultural and management practices (GAAMPs), and he agreed at the hearing that "tree planting and the use of water to irrigate the crops would be included in the definition" of farming activities protected by the RFTA. Whitman agreed that trees were planted on the property and he agreed that a pond used to irrigate crops would be protected under the RTFA. Whitman testified that the trees planted on the property indicated the potential for a farm market because they could be sold on the property.

In regard to the vehicles and equipment stored on the property, Whitman stated that he could not form an opinion as to whether they fell under the RFTA because he did not know what the equipment was used for. However, Whitman testified that if it was

being used for the commercial production of a farm product, then it would be permitted under the RTFA. Whitman further testified that the RTFA refers to the use of equipment and does not limit the amount of equipment that a person can maintain on a farm. Whitman also testified that he was aware of other farms that used heavy equipment for farming purposes, including bulldozers, cranes, and other "rather substantial equipment."

Gough testified that she purchased the property intending to start a tree farm and that appellants had made significant improvements to the property in order to prepare it for farming. Specifically, appellants graded the property, made improvements to the driveway, and extended it to provide access to the rest of the property. Gough stated that Bateson hauled in several truckloads of asphalt millings and had to dig up soil to lay the asphalt. Gough further stated that the previous owners left large piles of dirt along the driveway when they built it so appellants had to remove that dirt. Gough testified that neighbors who saw a large number of trucks coming and going from the property were observing the property at the time appellants were doing asphalt work.

Gough denied that appellants were engaged in commercial activity other than farming. Gough admitted that appellants removed some soil, but stated that it was in relation to the paving and grading projects, and she denied that 500 truckloads of material had been removed. Gough estimated that appellants removed about 30 truckloads, explaining that most of the loads went to Bateson's industrial site for processing and use elsewhere. Gough was also aware of two instances in which material was removed from the property and delivered to some customers.

In regard to the tree farming operation, Gough testified that Bateson used his equipment to move topsoil, prepare the land for planting, and dig holes for planting trees. Gough and family members followed behind and planted about 500 or 600 trees by hand. Gough stated that appellants planned to use two cranes stored on the property to dig an irrigation pond. Gough also stated that she intended to build a barn on the property, obtain livestock, and build a farm market with a parking lot. Gough planned to use hay that Bateson baled for the livestock.

Bateson testified that he was involved in the business of contracting and supplying landscape materials and that he previously owned two commercial locations in Michigan. Bateson testified that he planned to use the property for farming and as a residence, but explained that the property required significant improvements because it was wet and improperly graded. According to Bateson, appellants improved the driveway, installed gravel and asphalt near the rear of the property where they intended to erect a farm market, and performed extensive landscaping. Bateson testified that he laid 10,000 yards of sod, used a lot of equipment to prepare the soil and move the sod, and installed a sprinkler system. Bateson testified that the equipment on the site would be used to dig an irrigation pond and for other farming purposes. Bateson agreed that he removed some material from the property, but claimed he did so within the limits of the LTZO. He denied that 500 truckloads of material were removed and instead estimated that he removed about 30 to 33 truckloads.

In regard to the farming operations, Bateson stated that appellants planted a substantial number of trees. Further, he planned on constructing an irrigation pond

for the trees. Bateson stated that he would be using cranes, loaders, bulldozers, and trucks to build the pond. Bateson also used his equipment to move and store hay bales. Bateson testified that all his activities on the property were related to farming or landscaping and that all the equipment on the property was being used for farm purposes.

Following the hearing, the trial court entered an order denying appellants' motions for summary disposition, granting injunctive relief in favor of Lima Township, and granting Lima's motion for summary disposition pursuant to MCR 2.116(I)(2) "in both cases." The trial court stated that appellants' activities were not permitted under the LTZA and were not protected by the RTFA. The court ordered appellants to stop removing soil and other aggregate materials from the property. Additionally, appellants were ordered to "cease and desist from parking and storing large gravel haulers and other dump trucks on the property, except while in the process of performing specific tasks permitted by this Order . . . ." Appellants were further ordered to remove "earth moving and excavation vehicles and equipment including such equipment as road graders, dozers, front end loaders, cranes, trenchers, backhoes, screeners, and drag lines" and to "cease and desist from the parking and storage of commercial trailers on the property." Finally, appellants were ordered to stop using "the property as a staging area for the coming and going of . . . commercial vehicles and equipment." The trial court denied appellants' motion for reconsideration, these appeals ensued, and this Court consolidated the appeals.[6]

---

[6] *Lima Twp v Bateson*, unpublished order of the Court of Appeals, entered November 17, 2011 (Docket Nos. 306575 and 306583).

II. ANALYSIS

A. SUMMARY DISPOSITION

Appellants first argue that the trial court erred by granting summary disposition in favor of Lima and by denying their motions for summary disposition. Appellants contend that summary disposition was inappropriately granted in favor of Lima because the court made credibility determinations and resolved factual disputes. We review de novo a trial court's decision on a motion for summary disposition. *Walgreen Co v Macomb Twp*, 280 Mich App 58, 62; 760 NW2d 594 (2008).

Having reviewed the record, we conclude that the trial court erred by granting Lima's motion for summary disposition. A court "is not permitted to assess credibility, or to determine facts" on a motion for summary disposition. *Skinner v Square D Co*, 445 Mich 153, 161; 516 NW2d 475 (1994). "Instead, the court's task is to review the record evidence, and all reasonable inferences therefrom, and decide whether a genuine issue of any material fact exists to warrant a trial." *Id*. Here, the trial court held an evidentiary hearing at which both parties presented evidence. The court then proceeded to make findings based on that evidence by concluding that appellant's activities were prohibited under the LTZA and not protected by the RTFA. On the basis of those findings, the court granted summary disposition in favor of Lima. This amounted to error because, as we will discuss in more detail, the trial court erred in applying the RTFA and there were genuine factual issues regarding whether appellants' activities were protected under the RTFA. In short, summary disposition should not have been granted for either party.[7] See *id*. (summary disposition is not

---

[7] We also note that the trial court erred by entering any order with respect to Case No. 10-000373-CZ—the case that Gough commenced—because the court had previously entered a stipulated order to dismiss that case.

proper if there is a genuine issue of material fact).

Appellants contend that their activities were protected under the RTFA. In so doing, appellants challenge the trial court's award of injunctive relief in favor of Lima.

This case requires that we construe applicable provisions of the RTFA. "Issues of statutory construction involve questions of law that we review de novo." *Cuddington v United Health Servs, Inc*, 298 Mich App 264, 271; 826 NW2d 519 (2012). "The primary goal of statutory interpretation is to give effect to the Legislature's intent, focusing first on the statute's plain language." *Klooster v City of Charlevoix*, 488 Mich 289, 296; 795 NW2d 578 (2011).

In this case, Lima alleged that appellants were engaged in activity that is not permitted under the LTZO. Generally, a violation of a zoning ordinance constitutes a nuisance per se, and a court must order it abated. MCL 125.3407; *Travis v Preston (On Rehearing)*, 249 Mich App 338, 351; 643 NW2d 235 (2002). However, "[u]nder the RTFA, a *farm* or *farming operation* cannot be found to be a nuisance if it meets certain criteria . . . ." *Travis*, 249 Mich App at 342-343 (emphasis added). More specifically, the rights afforded a farmer under the RTFA preempt local ordinances such that activities falling within the purview of the act cannot be barred by ordinance. MCL 286.474(6); see also *Travis*, 249 Mich App at 343-346 (noting that 1999 PA 261 amended the RTFA to preempt local ordinances). Therefore, if appellants' activity was protected under the RTFA, then the LTZO could not operate to bar appellants from engaging in the activity and Lima was not entitled to injunctive relief. Accordingly, the central

issue in this case is whether the trial court properly determined that appellants' activity was not protected under the RTFA.

In relevant part, the RTFA affords farmers the following protection:

> A *farm* or *farm operation* shall not be found to be a public or private nuisance if the farm or farm operation alleged to be a nuisance conforms to generally accepted agricultural and management practices according to policy determined by the Michigan commission of agriculture. [MCL 286.473(1) (emphasis added).]

Pursuant to this language, it is clear that to determine whether an activity is protected under the RTFA, a two-pronged analysis is required: first, the activity must constitute either a "farm" or a "farm operation," and second, the farm or farm operation must conform to the applicable GAAMPs. However, before proceeding to discuss these elements, we must determine the appropriate burden of proof.

### i. BURDEN OF PROOF UNDER THE RTFA

The RTFA is silent with respect to which party bears the burden of proof, and there is no published caselaw addressing the issue. Therefore, we look to the plain language of the act and the intent underlying the legislation in order to resolve this issue. *Klooster*, 488 Mich at 296.

As with most legislative enactments, the purpose and intent of the RTFA are multifaceted, arising from myriad conflicting interests. This Court has previously opined that the Legislature enacted the RTFA in 1981 in recognition of the expansion of development "outward from our state's urban centers and into our agricultural communities...." *Northville Twp v*

*Coyne*, 170 Mich App 446, 448-449; 429 NW2d 185 (1988). The RTFA was intended to "protect farmers from the threat of extinction caused by nuisance suits arising out of alleged violations of local zoning ordinances and other local land use regulations as well as from the threat of private nuisance suits." *Id*. at 449. As noted, the act provides that a farm or farm operation "shall not be found to be a public or private nuisance" if the farm or farm operation conforms to certain GAAMPs. MCL 286.473(1). In order to prove that challenged conduct constitutes a "farm" or "farm operation," an individual must show that he or she is engaged in the commercial production of a farm product. See MCL 286.473(1); *Shelby Charter Twp v Papesh*, 267 Mich App 92, 101; 704 NW2d 92 (2005).

The statutory language itself, coupled with the intent of the legislation, indicates that the RTFA is defensive in nature. See *Shelby Charter Twp*, 267 Mich App at 110 (noting that a party could establish a "meritorious defense" under the RTFA). Specifically, the language implies that the RTFA is an affirmative defense akin to immunity. See *Citizens Ins Co of America v Juno Lighting, Inc*, 247 Mich App 236, 241; 635 NW2d 379 (2001) (noting that an affirmative defense "does not controvert the plaintiff's establishing a prima facie case, but . . . denies that the plaintiff is entitled to recover on the claim for some reason not disclosed in the plaintiff's pleadings") (quotation marks and citation omitted); *Amburgey v Sauder*, 238 Mich App 228, 233; 605 NW2d 84 (1999), quoting Black's Law Dictionary (6th ed) (defining "immunity" as " '[f]reedom or exemption from penalty, burden, or duty' "); MCR 2.111(F)(3)(a) (immunity is an affirmative defense). Generally, a party raising an affirmative defense has the burden of proof with respect to the defense. See *Palenkas v Beaumont Hosp*, 432 Mich 527, 549; 443 NW2d 354 (1989) (noting that the party raising an affirmative de-

fense generally has the burden of production). Accordingly, we hold that a party relying on the RTFA as a defense to a nuisance action has the burden to prove that the challenged conduct is protected under the RTFA.

With respect to the applicable *standard* of proof, the RTFA is silent and there is no published caselaw addressing the issue. Generally, "in civil cases, the Legislature's failure to spell out a standard of proof . . . usually require[s] application of the preponderance of the evidence standard." *In re Moss*, 301 Mich App 76, 84; 836 NW2d 182 (2013). In keeping with our state's jurisprudence on the applicable standard of proof, we hold that, if a party asserts the RTFA as a defense, that party bears the burden to prove by a preponderance of the evidence that the challenged conduct is protected under the RTFA.

### ii. ELEMENTS OF A SUCCESSFUL RTFA DEFENSE

Having concluded that the RTFA is an affirmative defense and that the party relying on the defense has the burden of proof by a preponderance of the evidence, we now turn to the elements of a successful RTFA defense. As noted, in order for a party to successfully assert the RTFA as a defense, that party must prove the following two elements: (1) that the challenged condition or activity constitutes a "farm" or "farm operation" and (2) that the farm or farm operation conforms to the relevant GAAMPs. We proceed by examining the first element.

### (1) "FARM" or "FARM OPERATION"

The RTFA defines "farm" and "farm operation" in relevant part as follows:

(a) "Farm" means the land, plants, animals, buildings, structures, including ponds used for agricultural or aquac-

ultural activities, machinery, equipment, and other appurtenances *used in the commercial production of farm products*.

(b)"Farm operation" means the operation and management of a farm *or a condition or activity* that occurs at any time as necessary on a farm *in connection with the commercial production*, harvesting, and storage *of farm products*, and includes, but is not limited to:

(*i*) Marketing produce at roadside stands or farm markets.

(*ii*) The generation of noise, odors, dust, fumes, and other associated conditions.

(*iii*) The operation of machinery and equipment necessary for a farm including, but not limited to, irrigation and drainage systems and pumps and on-farm grain dryers, and the movement of vehicles, machinery, equipment, and farm products and associated inputs necessary for farm operations on the roadway . . . .

(*iv*) Field preparation and ground and aerial seeding and spraying.

(*v*) The application of chemical fertilizers or organic materials, conditioners, liming materials, or pesticides.

(*vi*) Use of alternative pest management techniques.

(*vii*) The fencing, feeding, watering, sheltering, transportation, treatment, use, handling and care of farm animals.

(*viii*) The management, storage, transport, utilization, and application of farm by-products, including manure or agricultural wastes.

(*ix*) The conversion from a farm operation activity to other farm operation activities.

(*x*) The employment and use of labor. [MCL 286.472 (emphasis added).]

"Both the definitions for 'farm' and 'farm operation' employ the terms 'farm product' and 'commercial production.' " *Shelby Charter Twp*, 267 Mich App at 100.

Thus, under "the plain language of the RTFA, a farm or farming operation cannot be found to be a nuisance if it is commercial in nature and conforms to the GAAMPs." *Id.* at 101.

The act provides that "farm product" means *"those plants and animals useful to human beings produced by agriculture* and includes, but is not limited to . . . trees and tree products . . . ." MCL 286.472(c) (emphasis added). This Court has previously defined "commercial production" as "the act of producing or manufacturing an item intended to be marketed and sold at a profit." *Shelby Charter Twp*, 267 Mich App at 100-101. However, "there is no minimum level of sales that must be reached before the RTFA is applicable." *Id.* at 101 n 4.

Applying these definitions in the present case shows that the trees appellants planted on their property are "farm products." MCL 286.472(c). However, there was a genuine issue of fact with regard to whether appellants proved by a preponderance of the evidence that they intended to produce the trees and sell them for profit and whether the alleged nuisances were necessarily related to the production and sale of the trees. Specifically, evidence showed that appellants kept heavy equipment on the property, removed soil from the property, and had extensive truck traffic at the property. However, other evidence showed that appellants planted a large number of trees on the property, that appellants intended to open a farm market there, and that appellants used the machinery to prepare the land and move farm products. Gough testified that appellants planted 500 to 600 trees, extended the driveway on the property, dug holes for trees, planned to dig an irrigation pond, brought in topsoil, baled hay, and intended to build a barn and a farm market. If so, the machinery falls within a "farm operation" under MCL 286.472(b)(*iii*).

In addition, Bateson testified that the property needed significant improvement because it was wet and improperly graded. He testified that appellants improved the driveway, installed gravel, laid sod, and installed a sprinkler system. Bateson testified that appellants planted a large number of trees and had cranes, bulldozers, and trucks on the property to dig an irrigation pond. Appellants could have engaged in these activities in order to prepare the land for planting, irrigating, maintaining, harvesting, and selling trees at a farmer's market.

Additionally, one witness testified that farmers would like to have a lot of the equipment that appellants had on the property. Moreover, Whitman, the Right to Farm program's environmental manager, did not testify that appellants were engaging in activity that fell outside the scope of the RTFA. Rather, Whitman could not offer an opinion as to whether appellants were engaged in farming because he did not know what type of vegetation was growing, but he testified that vegetation could suggest ongoing farming. With respect to the vehicles and equipment stored on the property, Whitman could not give an opinion as to whether they fell under the RTFA because he did not know what the equipment was used for. Whitman testified that the RTFA does not limit the amount of equipment one can use for the production of farm products and that other farms used heavy equipment similar to the equipment appellants kept at the property. Other evidence showed that appellants had not violated the soil erosion ordinance, which suggested that appellants were not conducting a gravel or soil operation. This evidence was inconclusive, but, when weighed with all the other evidence, it could have supported appellants' contention that they were engaged in the commercial production of a farm product. This conflicting material evidence precluded a grant of summary disposition to either party. The

trial court was required to weigh this evidence together with all the other evidence and articulate findings as to whether the alleged nuisances arose from the commercial production of trees.

We hold that the evidence presented by the parties required the trial court to weigh all the evidence and articulate findings of fact to determine whether appellants proved by a preponderance of the evidence that the alleged nuisance conditions and activities arose from the commercial production of trees, and the trial court erred by failing to do so.[8] Remand for further proceedings is therefore appropriate.

### (2) COMPLIANCE WITH GAAMPs

If a party asserting an RTFA defense successfully proves that they maintain a farm or are engaged in a farm operation, then the party must also prove that the farm or farm operation complies with applicable GAAMPs "according to policy determined by the Michigan commission of agriculture." MCL 286.473(1). A party can satisfy this element by introducing credible testimony or other evidence to show that their farm or farm operation complies with applicable GAAMPs as set forth by the Michigan Commission of Agriculture.

In this case, the trial court did not make any findings with respect to the applicable GAAMPs. On remand, if the trial court concludes that appellants' are maintain-

---

[8] Given our resolution of this issue, we decline to address whether appellants' activities were permissible under the LTZO. If, on remand, the trial court determines that appellants are engaged in the commercial production of a farm product, then the LTZO is inapplicable. See *Travis*, 249 Mich App at 344. However, if the trial court determines that the RTFA does not apply, before awarding injunctive relief, it should articulate findings as to whether appellants are in violation of the LTZO. See *id.* at 351; MCL 125.3407.

ing a farm or farm operation, the trial court must then determine whether the farm or farm operation complies with the applicable GAAMPs. Appellants bear the burden to prove compliance with the GAAMPs by a preponderance of the evidence.

In sum, the trial court abused its discretion by granting Lima injunctive relief in that it erred as a matter of law when it failed to make the requisite findings under the RTFA. *In re Waters Drain Drainage Dist*, 296 Mich App 214, 220; 818 NW2d 478 (2012) (stating that a court "by definition abuses its discretion when it makes an error of law"). Accordingly, remand for further proceedings is appropriate.

### C. EVIDENTIARY ERROR

Appellants next argue that the trial court abused its discretion when it refused to allow the testimony of a rebuttal witness they proffered at the evidentiary hearing. We review a trial court's decision to admit or exclude evidence, including rebuttal testimony, for an abuse of discretion. *Chmielewski v Xermac, Inc*, 457 Mich 593, 614; 580 NW2d 817 (1998).

During the evidentiary hearing, appellants attempted to call Robert Pesko. Counsel for appellants did not identify Pesko as a testifying witness during discovery. Counsel represented that Pesko, an engineer, would testify regarding the type of materials removed from the property as well as the amount of material that could have been removed from the property. Counsel stated that Pesko's testimony would rebut witnesses who testified for Lima that approximately 500 truckloads of material had been removed from the property. The trial court excluded the testimony because Pesko was not listed as a witness and because it reasoned that Pesko's testimony was not rebuttal testimony. Later during the hearing, Lima called

Jeffrey Wallace, the manager and zoning administrator for the village of Manchester. Wallace was called to rebut statements Bateson made about an unrelated industrial site that Bateson operated in Manchester. Though Lima had not previously identified Wallace as a witness, the trial court allowed the testimony, indicating that it would gauge from the testimony whether it was rebuttal testimony.

In this case, the trial court abused its discretion by excluding Pesko's testimony because it erred as a matter of law by concluding that Pesko's testimony did not amount to rebuttal. See *In re Waters Drain Drainage Dist*, 296 Mich App at 220. "Rebuttal testimony is used to contradict, explain, or refute evidence presented by the other party in order to weaken it or impeach it." *Winiemko v Valenti*, 203 Mich App 411, 418; 513 NW2d 181 (1994). "The purpose of rebuttal evidence is to undercut an opponent's case, and a party may not introduce evidence competent as part of his case in chief during rebuttal unless permitted to do so by the court." *Id.* at 418-419. In this case, Lima offered testimony that appellants had removed about 500 truckloads of material from the property. Pesko's testimony regarding the amount of material removed from the property could have contradicted Lima's evidence. Therefore, the trial court erred as a matter of law by concluding that the testimony was not rebuttal and excluding it on that ground. The legal error amounted to an abuse of discretion. See *In re Waters Drain Drainage Dist*, 296 Mich App at 220. On remand, the trial court should consider Pesko's testimony before articulating findings under the RTFA.

### D. EQUAL PROTECTION

Appellants' final argument is that Lima improperly singled them out as a "class of one" and denied them

equal protection and due process. We review appellants' unpreserved claim of constitutional error for plain error affecting the outcome of the proceeding. *In re Application of Consumers Energy Co*, 278 Mich App 547, 568; 753 NW2d 287 (2008). We review de novo constitutional questions such as whether a party was denied due process and equal protection under the law. *Shepherd Montessori Ctr Milan v Ann Arbor Charter Twp*, 486 Mich 311, 317; 783 NW2d 695 (2010).

"The equal protection clauses of the Michigan and United States constitutions provide that no person shall be denied the equal protection of the law." *Id*. at 318; see also US Const; Am XIV; Const 1963, art 1, § 2. "The Equal Protection Clause requires that all persons similarly situated be treated alike under the law." *Shepherd Montessori Ctr Milan*, 486 Mich at 318. To be considered similarly situated, "the challenger and his comparators must be '*prima facie* identical in all relevant respects or directly comparable . . . in all material respects.' " *United States v Green*, 654 F3d 637, 651 (CA 6, 2011) quoting *United States v Moore*, 543 F3d 891 (CA 7, 2008). A "class of one" may initiate an equal protection claim by alleging that he or she "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v Olech*, 528 US 562, 564; 120 S Ct 1073; 145 L Ed 2d 1060 (2000).

Appellants argue that Lima intentionally treated them differently from other similarly situated individuals. Specifically, appellants refer to Howard Sias and Kenneth Prielipp, who both testified at the hearing. Appellants provide no factual analysis of how these individuals are similarly situated, and the record does not support the assertion that they were. There is little

similarity between appellants and Sias and Prielipp. Evidence did not show that Sias and Prielipp maintained the same amount and type of equipment on their property as appellants did, and there was no evidence to show that Sias and Prielipp were engaged in the same type of work on their properties. In sum, appellants were not denied their right to equal protection because they have failed to show that they were treated differently from other similarly situated individuals. See *Shepherd Montessori Ctr Milan*, 486 Mich at 318. Accordingly, appellants' assertion that the alleged equal protection violation amounted to a deprivation of due process also fails.

We reverse and remand for the trial court to conduct, within 91 days after receipt of this opinion, further proceedings consistent with this opinion. We retain jurisdiction. Neither party having prevailed in full, neither may tax costs. MCR 7.219.

JANSEN, P.J., and WHITBECK and BORRELLO, JJ., concurred.