# STATE OF MICHIGAN

# COURT OF APPEALS

TRINA TURNER,

        Plaintiff-Appellant,

and

NINA SMITH,

        Plaintiff,

v

KENNETH JOHNSON,

        Defendant-Appellee,

and

ESURANCE INSURANCE COMPANY,

        Defendant.

UNPUBLISHED
September 12, 2017

No. 332333
Wayne Circuit Court
LC No. 14-009571-NI

Before: TALBOT, C.J., and SAWYER and STEPHENS, JJ.

STEPHENS, J. (*dissenting*)

Accepting the legal standards as cited by the majority, I respectfully dissent. In reaching their conclusion the majority accepts the analysis of the trial court which based summary disposition on the third prong of *McCormick v Carrier*, 487 Mich 180; 795 NW2d 517 (2010), which states that a plaintiff must show that they have suffered an impairment that affects the person's general ability to lead a normal life. As to the third prong the Court noted:

> Relative to Ms. Turner, the Court notes, as has been outlined in the brief, that she continued to drive. She missed only one day of work. In terms of her employment, she's highly successful in her career, continues to be highly successful in her career. Her other interest of the ministry, she continued to do that. There are no restrictions placed on her. Taking the evidence in a light most favorable to a non-moving party, the Court feels that this is--it does fall short of that which is needed to take it to a jury, in that her ability to lead a normal--her

-1-

general ability to lead a normal life has not been shown to be impacted, to the extent that would rise to a serious impairment of a body function.

A review of pages 84-97 of plaintiff's deposition reveals the following manifestations of change in the plaintiff's life since the motor vehicle accident:

1. Change in household duties- hired maintenance service to do both the lawn and the snow and no longer vacuums or cleans the tub.
2. Change in recreational life- no longer bowls, limits attendance at movies and no longer dances.
3. Change in her religious practice – restrained in worship.
4. Continues to use a back brace.

The guidance in *McCormick* and its progeny is to look to the plaintiff's pre and post-accident life to determine if the general ability to lead the injured party's normal life has been affected. Nothing in the case law creates a bright line as to what construes a normal life. An impairment affects a person's general ability to lead a normal life if it has "an influence on some of the person's capacity to live in his or her normal manner of living." *Id*. at 202. In order to determine whether the impairment in question has affected a person's ability to lead a normal life requires a comparison of the person's life before and after the incident in question. *Id.* This is a subjective, case specific inquiry, which does not require a specific temporal showing or a "quantitative minimum as to the percentage of a person's normal manner of living that must be affected." *Id*. at 203. Rather, there must be evidence presented showing "some of the person's ability to live in his or her normal manner of living has been affected, not that some of the person's normal manner of living has itself been affected." *Id.* at 202. This showing merely requires that the "person's general ability to lead his or her life has been *affected*, not destroyed." *Id.*

It is inherently subjective. The significance of diminution of an activity depends on the significance of that activity to the person so diminished. An elder who was wheelchair bound before an accident but whose injury makes it difficult to sit in that wheelchair has had an effect on her normal life. This plaintiff stated that her faith practice, her home life and social life were important to her. I believe that reasonable minds could differ on whether this plaintiff's altered lifestyle supports a finding that it affected her general ability to lead her normal life and therefore, it is appropriate to leave such decisions to a jury. See, e.g., *Lima Twp* v *Bateson*, 302 Mich App 483, 492; 838 NW2d 898 (2013) ("A court is not permitted to assess credibility, or to determine facts on a motion for summary disposition.") (quotations and citations omitted).

I note the trial court and the majority indicate that her restrictions are self-imposed. Dr. Qadir's records manifested several reports restricting plaintiff's activities that required liberal movements, such as lifting, twisting, standing for long periods of time, and the like. Dr. Qadir also provided plaintiff with certificates of disability addressing such restrictions. To the extent that the physician also, acknowledged the patient as a partner in her own care and afforded her the caution to avoid activities that caused pain it is also a soft restriction. Considering that both the plaintiff's physician and the IME examiners agreed that no further formal treatment was going to render a better result, the prospective caution is reasonable and prudent. While the trial court may not have agreed with the doctor's instructions and deemed them unnecessary, it is not the role of a trial court to engage in fact-finding when ruling on a motion for summary

disposition. Rather, if reasonable minds could differ on a point of fact, it is appropriate to leave such decisions to a jury. *Id*. Similarly, that defendant points out that the independent medical examination (IME) yielded different findings than those of plaintiff's doctor, in that Dr. Steven Arbit suggested that plaintiff's complaints were merely subjective and unsupported, does not alter this writer's conclusion. Again, if contentions of material fact exist in the record, case law dictates that those questions are best resolved by a jury.


/s/ Cynthia Diane Stephens