*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MELANIE WELCH,

               Plaintiff-Appellant,

v

DOUGLAS SELBY,

               Defendant-Appellee.

UNPUBLISHED
October 02, 2025
10:23 AM

No. 371031
Washtenaw Circuit Court
LC No. 22-001215-NZ

Before: O'BRIEN, P.J., and K. F. KELLY and BORRELLO, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court's order granting defendant's motion for summary disposition under MCR 2.116(C)(10). We reverse and remand for further proceedings.

## I. BACKGROUND

Plaintiff and defendant have a fraught history that seemingly began after plaintiff's daughter hired defendant's company to perform home-improvement work in 2015. After plaintiff's daughter failed to pay defendant's company's bill, defendant's company "initiated a breach of contract and foreclosure of construction lien action against" plaintiff's daughter, and plaintiff's daughter counterclaimed. *Meadowlark Builders LLC v Evans*, unpublished per curiam opinion of the Court of Appeals, issued February 5, 2019 (Docket No. 341492), p 1. Defendant's company's claims proceeded to trial, as did plaintiff's daughter's claim for unjust enrichment. *Id.* On the day of trial, neither plaintiff's daughter nor plaintiff's daughter's attorney appeared, but the trial court—now-retired Judge Timothy Connors—ordered the trial to proceed anyway. *Id.* After defendant's company's proofs, Judge Connors granted defendant's company's motions for default judgment and directed verdict. *Id.*

Plaintiff, unhappy with her daughter's experience with defendant's company, began showing up at events held by defendant's company. Plaintiff would stand on public sidewalks outside of the events and collect email addresses from potential customers of defendant's company, hoping to inform the prospective customers that she "was a former customer of" defendant's company and that she "had been extremely dissatisfied with the quality of the remodeling work done by" the company.

-1-

This led to a contentious relationship between the parties, which came to a head on September 22, 2019. Everyone more or less agrees on the facts of what happened. On that day, Barbara Burkhardt was attending an event for defendant's company. Plaintiff was collecting email addresses on a notebook outside of the event, and Burkhardt gave plaintiff her email address. Burkhardt later decided that she did not want plaintiff to have her email address, and when plaintiff refused to cross out Burkhardt's email, Burkhardt attempted to grab plaintiff's notebook. A struggled ensued, and defendant intervened. During the struggle, plaintiff made physical contact with defendant and Burkhardt while trying to retrieve her notebook.

Police were called, and there is bodycam footage from one of the officers who responded to the scene. The bodycam video begins with an officer approaching defendant and plaintiff (who were standing near one another), separating them, then speaking with defendant to have him explain what happened. Defendant tells the officer that he has had problems with plaintiff for years, but this is the first time that plaintiff assaulted anyone. Defendant claimed that plaintiff had been outside defendant's company's event "impersonating" one of defendant's employees in order to collect email addresses. One of defendant's customers, defendant stated, mistakenly gave plaintiff her email address and later wanted plaintiff to cross out the customer's information. Defendant said that "the woman reached out for the notepad," and plaintiff hit the woman's hand away. When defendant intervened, plaintiff pushed him too.

The officer then interviewed plaintiff, who said that the incident occurred after defendant and the woman "were grabbing my notebook." She claimed that was all that happened; "they grabbed my notebook and I grabbed it back." The officer asked plaintiff whether she pushed the woman, and plaintiff said she thought so. Then the officer asked plaintiff whether she pushed defendant, and she again replied, "I think so, yeah." The officer later explained to plaintiff that he was only there to investigate the alleged assault, and plaintiff said, "I had the right to get my notebook back."

After interviewing plaintiff, the officer went back to defendant and asked whether the woman tried to grab plaintiff's notebook. Defendant confirmed that the woman was trying to grab plaintiff's notebook to cross her email off.

In the officer's police report of the incident, the officer wrote the following for defendant's statement:

> [Defendant] stated today, there was a female client identified as BARBARA BURKHART, along with another female, and her daughter. . . . BARBARA was walking up to the home, when she was confronted by [plaintiff] asking for her personal information. BARBARA was holding the notepad, and [plaintiff] grabbed the notepad out of her hand, and pushed BARBARA. [Defendant] intervened, and was also pushed by [plaintiff].

For plaintiff's statement, the officer wrote:

> [Plaintiff] was approached by a female, who grabbed her notepad out of her hands to remove her name from the list. [Plaintiff] showed me the book that she keeps

names documented so that she can take her case to the supreme court district of appeals [sic].

[Plaintiff] said she grabbed the notepad back from the female, and did say that she pushed her in the process. [Plaintiff] was familiar with [defendant], and stated he came up and was also trying to keep her from retrieving the notepad, and also pushed [defendant] in the process. [Plaintiff] felt that she had a right to retrieve her notepad as it was grabbed out of her hands in the first place.

The report noted that defendant wished to pursue charges for assault, and that the report was being sent for review by the prosecutor's office.

Plaintiff was charged two different times with assault and battery in relation to the September 22, 2019 altercation. First, in October 2019, plaintiff was charged with two counts of assault and battery—one in relation to defendant, the other in relation to Burkhardt. According to plaintiff's complaint, those charges were dropped, and plaintiff was charged a second time in October 2020.[1] But this time she was only charged with a single count of assault and battery related to defendant. This charge, too, was dropped.

Following this second dismissal, plaintiff filed her complaint giving rise to this action. Plaintiff's complaint alleged a single count of malicious prosecution against defendant. Plaintiff's complaint was assigned to Judge Carol Anne Kuhnke. Plaintiff filed her complaint in September 2022. Over the next year and a half, plaintiff unsuccessfully sought to have Judge Kuhnke disqualified from her case for reasons that will be discussed later in this opinion.

On January 22, 2024, defendant moved for summary disposition under MCR 2.116(C)(10), arguing that he was entitled to summary disposition because plaintiff could not establish an element of her claim—that the prosecution against her lacked probable cause. In support of his argument, defendant relied almost exclusively on the bodycam footage taken from the officer who responded to the alleged assault and battery on September 22, 2019. Defendant contended that this footage resolved any dispute in this case because, in the footage, plaintiff acknowledged that she pushed or shoved defendant but never claimed that she did so in self-defense, which established probable cause to prosecute her for assault and battery.

In response, plaintiff argued that the charges against her were not supported by probable cause because, while she pushed defendant, her conduct was justified. This was so, plaintiff argued, because she pushed defendant while attempting to defend her property—the notebook that was taken from her. Plaintiff contended that nothing in the bodycam footage contradicted this because, in the footage, plaintiff repeatedly claimed that she was trying to get her notebook back.

In reply, defendant contended that he made a full and fair disclosure to police of what happened, which established that the charges against plaintiff were supported by probable cause.

---

[1] Defendant has never disputed that plaintiff was charged twice in connection to the September 22, 2019 altercation, but only the October 2019 charging document is in the lower court file.

Defendant added that the prosecutor independently decided to charge plaintiff after reviewing the police report, and he contended that he could not be held liable for that decision.

On May 1, 2024, the trial court held a hearing on defendant's motion, at which the parties argued in line with their briefs. After listening to the parties' arguments, the trial court took the matter under advisement. The next day, the trial court issued an order granting defendant's motion for summary disposition for the reasons stated in defendant's motion.

This appeal followed.

## II. SUMMARY DISPOSITION

Plaintiff argues that the trial court erred by granting defendant's motion for summary disposition because there is a question of fact whether the charges she faced lacked probable cause. We agree.

## A. STANDARD OF REVIEW

A trial court's ruling on a summary disposition is reviewed de novo. *Neal v Wilkes*, 470 Mich 661, 664; 685 NW2d 648 (2004). The trial court granted defendant's motion for summary disposition filed under MCR 2.116(C)(10). A motion filed under MCR 2.116(C)(10) "tests the factual sufficiency of the complaint." *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999). "In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, in the light most favorable to the party opposing the motion." *Id*. at 119-120. A motion for summary disposition under MCR 2.116(C)(10) is properly granted when a claim presents no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Bazzi v Sentinel Ins Co*, 502 Mich 390, 398; 919 NW2d 20 (2018). A genuine issue of material fact exists when, after viewing the evidence in a light most favorable to the nonmoving party, reasonable minds could differ on the issue. *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008).

## B. ANALYSIS

This case concerns a claim for malicious prosecution. Malicious prosecution is a tort that tries to balance an individual's interest in seeking redress for a wrongful prosecution with the public's interest in "encouraging proceedings against those who are apparently guilty." *Matthews v Blue Cross & Blue Shield of Michigan*, 456 Mich 365, 377; 572 NW2d 603 (1998) (quotation marks and citation omitted). The public's interest generally tends to win out, so "actions for malicious prosecution have historically been limited by restrictions that make them difficult to maintain." *Id*.

To sustain an action for malicious prosecution, a plaintiff must present evidence establishing "(1) that the defendant has initiated a criminal prosecution against him, (2) that the criminal proceedings terminated in his favor, (3) that the private person who instituted or maintained the prosecution lacked probable cause for his actions, and (4) that the action was

undertaken with malice or a purpose in instituting the criminal claim other than bringing the offender to justice." *Id*. at 378.

Defendant argued in his motion for summary disposition, and the trial court agreed, that defendant was entitled to summary disposition because there was no question of material fact that the charges against plaintiff were supported by probable cause. In other words, defendant argued that there was no question of fact that plaintiff could not establish the third element of her claim. Our Supreme Court in *Matthews* defined probable cause as follows:

> To constitute probable cause . . . , there must be such reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant an ordinarily cautious man in the belief that the person arrested is guilty of the offense charged. [*Id*. at 387 (quotation marks and citation omitted).]

Plaintiff contends that the trial court erred by agreeing with defendant's argument that there was no question of fact that the assault-and-battery charges against plaintiff were supported by probable cause because there was a question of fact whether plaintiff's reasonable use of force against defendant and Burkhardt was justified to prevent them from taking her notebook.

It is true that an individual is permitted to use "force for the purpose of reclaiming his property" so long as the individual does not use more force than necessary to reclaim the property. *Miller v Sadowsky*, 138 Mich 502, 504; 101 NW 621 (1904). See also *People v Shaffran*, 243 Mich 527, 528-529; 220 NW 716 (1928) (recognizing a similar rule in the context of real property). Plaintiff is not merely raising this as an affirmative defense, however; she is arguing that she can maintain her malicious-prosecution claim because she can establish a question of fact that the charges she faced lacked probable cause on grounds that her conduct underlying those charges was justified by this defense. The parties do not cite—and we are unable to find—a Michigan case in which a court has held that a party asserting a claim for malicious prosecution can establish that the charge(s) against them lacked probable cause because the plaintiff's ostensibly-criminal conduct was justified by an affirmative defense.

Such an argument was, however, put forth by the plaintiff in *Carter v Sutherland*, 52 Mich 597; 18 NW 375 (1884). There, a man identified only as "Brown" "removed whiffletrees from plaintiff's wagon and started to go away with them," in response to which the plaintiff "picked up a wagon stake and told Brown if he did not put down the whiffletrees he would break his head, and Brown dropped them." *Id*. at 598. Upon seeing this, the "defendant made complaint against plaintiff before a justice of the peace," claiming "an assault only."[2] *Id*. The plaintiff was acquitted and subsequently brought a claim for malicious prosecution against the complaining defendant. *Id*. at 597-598. When the trial court instructed the jury on the plaintiff's malicious-prosecution claim, the court stated:

---

[2] The magistrate mistakenly issued a charge for assault and battery, which created another issue that the *Carter* Court addressed, but that issue is not relevant for present purposes. See *id*. at 598, 600-601.

> While a party has a right to protect his property, yet he would be only justified in using just force enough to protect his property. He might have been justified in this instance in taking away the whiffletrees from Mr. Brown, and using only enough force to do it. But he would not be justified in striking him on the head with a stick or inflicting injury of that character because he did not put the whiffletrees down; that would not be defending his property, but it would be inflicting punishment, because he took the property, for which he would not be justified. [*Id*. at 599-600.]

The court added that if the jury believed that the defendant was telling the truth when he said that he observed the latter—that the plaintiff intended to strike Brown on the head if he did not put down the whiffletrees—then the defendant observed an assault and would have been "entirely justified in making this complaint." *Id*. at 600. Justice COOLEY, writing for the Court, stated that these instructions "seem to us entirely fair," and the Court rejected the plaintiff's argument that the instructions "took from the jury the question whether the plaintiff was chargeable with more force than was necessary in defense of his property" because "[t]he judge stated correctly what force would be excessive and what not, and he went no further." *Id*. at 601.

*Carter* is strikingly similar to this case. The plaintiff in *Carter*, like plaintiff here, was charged with assault while trying to retrieve personal property. And the plaintiff in *Carter*, like plaintiff here, sought to hold the complaining defendant liable for malicious prosecution because the plaintiff believed that the charge against him was improper on grounds that the plaintiff had a right to defend his personal property. We acknowledge that the *Carter* Court did not explicitly address whether a plaintiff can establish a claim for malicious prosecution by showing that a charge lacked probable cause because the plaintiff's conduct was justified by an affirmative defense. But that was essentially the plaintiff's theory in *Carter*, and the *Carter* Court did not take any issue with it. Instead, the *Carter* Court quoted at length the trial court's instructions discussing how the plaintiff's malicious prosecution claim could prevail if the jury found that the plaintiff's otherwise-criminal conduct was justified, and the Court stated, "These instructions are complained of, but they seem to us entirely fair." *Id*.

*Carter* aside, we believe that a plaintiff in an action for malicious prosecution should be allowed to demonstrate a lack of probable cause by showing that the facts known to the complaining witness[3] established that the plaintiff had a meritorious affirmative defense to the charge for which they were prosecuted. In the context of a preliminary examination, this Court has recognized that an affirmative defense can establish a lack of probable cause to bind over a

---

[3] As our Supreme Court explained in *Hall v Am Inv Co*, 241 Mich 349, 354-355; 217 NW 18 (1928):

> The rule is generally accepted that, in determining whether there was probable cause for the institution of a criminal prosecution, *only those facts and circumstances as were known to the complainant at the time of instituting the criminal prosecution are to be considered*, and not facts which subsequently appeared. The inquiry as to probable cause goes back to the commencement of the criminal prosecution, and it relates to facts then known as they then appeared. [Emphasis added. See also *Matthews*, 456 Mich at 389 n 35.]

defendant for trial. See *People v Schurr*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 365104); slip op at 12. More broadly, considering a possibly-meritorious affirmative defense is consistent with the definition of "probable cause" as whether a person can hold a "belief that the person arrested is guilty of the offense charged." *Matthews*, 456 Mich at 387 (quotation marks and citation omitted). Generally speaking, a person who is guilty of a crime is criminally liable for it, and a person who has a meritorious affirmative defense to a crime is not criminally liable for it.

Considering plaintiff's claim that her use of force was justified to defend her personal property, we hold that there is a question of fact whether "an ordinarily cautious man" would believe that plaintiff was guilty of assault and battery. See *id*. The circumstances giving rise to the assault-and-battery charges against plaintiff were fairly innocuous. Burkhardt got upset that plaintiff would not cross out her email address, so Burkhardt grabbed plaintiff's notebook. Defendant clearly knew this fact, as he conveyed it to officers in the bodycam footage. According to plaintiff, she pushed defendant and Burkhardt while trying to get her notebook back—a claim she repeated multiple times in the bodycam footage. No one alleged that plaintiff's conduct was violent or that she did anything besides use enough force to get her notebook back. With that in mind, we conclude that, viewing the evidence in the light most favorable to plaintiff, a reasonable juror could find that the charges against plaintiff lacked probable cause due to plaintiff's affirmative defense.

Defendant argues that plaintiff cannot establish that the charges against her lacked probable cause because she admitted to pushing defendant in the bodycam footage. This assertion misunderstands the significance of plaintiff's argument. "An affirmative defense is one that admits the doing of the act charged, but seeks to justify" it. *People v Lemons*, 454 Mich 234, 246 n 15; 562 NW2d 447 (1997) (quotation marks and citation omitted). Plaintiff's assertion of an affirmative defense thus admits the underlying conduct (that she pushed defendant). It follows that plaintiff's admitting to pushing defendant does not affect our analysis of whether the charge against plaintiff lacked probable cause due to plaintiff's affirmative defense.

Defendant next contends, as he did below, that probable cause was established when he made a full and fair disclosure to the officer who responded to the scene about the circumstances surrounding the altercation. But whether defendant made a full and fair disclosure is not relevant to determining whether plaintiff can establish a lack of probable cause. As the *Matthews* Court explained, whether a defendant in a malicious-prosecution case makes a "full and fair disclosure of a material fact" is "inapposite" to whether a plaintiff's proofs make out "a prima facie case of the absence of probable cause." *Matthews*, 456 Mich at 388-389. That a defendant facing a malicious-prosecution claim made a full and fair disclosure of the material facts goes to whether the defendant can claim an advice-of-counsel defense, which relates to who "instituted" the prosecution (the first element of a claim for malicious prosecution) not whether the prosecution lacked probable cause (the third element of a claim for malicious prosecution). See *id*. at 390-391, quoting *King v Arbic*, 159 Mich App 452, 466; 406 NW2d 852 (1987) (discussing "the defense of advice of counsel" and explaining that this defense was not "an attack on the 'lack of probable cause' prong" but was "based upon the idea that defendant has not in fact instituted the prosecution") (quotation marks and citations omitted). See also See Staff Comment to M Civ JI 117.04 (citing *Matthews* for the assertion that "[t]he affirmative defense of reliance on advice of

an attorney after full and fair disclosure of material facts should not be confused with probable cause").

Defendant alternatively argues that plaintiff's claim for malicious prosecution must fail because defendant made a full and fair disclosure to the investigating officer, that officer referred the case to the prosecutor, and the prosecutor exercised his independent discretion to bring the charges against plaintiff. In other words, without identifying it, defendant is raising the affirmative defense of advice of counsel.

As alluded to above, this defense was explained by our Supreme Court in *Matthews*. The plaintiff in *Matthews* sought to establish a lack of probable cause by showing that the defendant failed to fully disclosure all material facts to the investigating officer.[4] *Matthews*, 456 Mich at 378-379. Our Supreme Court explained that this was error because "the plaintiff's burden in a malicious prosecution case is to make a prima facie showing that the defendant's agents lacked probable cause to believe that the plaintiff had committed a crime." *Id*. at 379. Whether a defendant made a full and fair disclosure is not relevant to the plaintiff's prima facie case but goes to whether the defendant can claim "the affirmative defense of reliance on advice of an attorney." *Id*. at 379-380.

That affirmative defense provides that a plaintiff bringing a malicious-prosecution claim cannot establish that a private person instituted or maintained the prosecution if the prosecution was the result of the prosecutor's independent and uncontrolled discretion. See *id*. at 384; 3 Restatement Torts, 2d, § 653, comment g. Stated differently, "the prosecutor's exercise of his independent discretion in initiating and maintaining a prosecution is a complete defense to an action for malicious prosecution." *Matthews*, 456 Mich at 384. A private person cannot avail themselves of this defense, however, if the person knowingly provided false information to the prosecutor, and the prosecutor relied on that false information to initiate the prosecution. *Id*. at 385; 3 Restatement Torts, 2d, § 653, comment g.

With this understanding of the advice-of-counsel defense, it is clear that defendant's alternative argument on appeal is completely different from any argument he made in his motion for summary disposition. In that motion, defendant argued that plaintiff could not establish the third element of her claim (that the charges against her lacked probable cause). In his alternative argument, defendant contends that he has *an affirmative defense* to the *first* element of plaintiff's malicious-prosecution claim (that defendant instituted or maintained the charges against plaintiff). So, defendant's alternative argument not only contests a different element of plaintiff's claim but defendant has the burden of proof for his new argument. See *Lima Twp v Bateson*, 302 Mich App 483, 495; 838 NW2d 898 (2013) ("Generally, a party raising an affirmative defense has the burden

---

[4] This is the inverse of defendant's argument here—the plaintiff in *Matthews* argued that the lack of a full and fair disclosure established a lack of probable cause, while defendant here argues that his full and fair disclosure establishes that the charges against plaintiff were supported by probable cause.

of proof with respect to the defense."). For these reasons, we conclude that defendant's alternative argument is not properly before this Court, and we decline to address it as part of this appeal.[5]

Whether defendant made a full and fair disclosure of material facts is relevant to establishing the affirmative defense of advice of counsel, which relates to who "instituted" the charges against plaintiff, not whether the charges against plaintiff lacked probable cause. Having clarified this, and having concluding that the trial court erred by concluding that there was no question of fact that the charges against plaintiff were supported by probable cause, we remand the case back to the trial court for further proceedings. Nothing in this opinion should be construed as preventing defendant from raising an advice-of-counsel defense on remand—if defendant wishes to raise that defense and his doing so would be proper, then he remains free to raise the defense in the trial court. Plaintiff will then have the opportunity to respond to defendant's argument, and the trial court can consider the issue in the first instance.

## III. REMAND TO A DIFFERENT JUDGE

Plaintiff argues that, if this Court agrees that remand is proper, then the case must be remanded to a different trial judge because, according to plaintiff, allowing Judge Kuhnke to continue presiding over this case creates the appearance of impropriety. We disagree.

Our Supreme Court has identified the following factors that are to be considered when determining whether remand to a different judge is required:

> (1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously-expressed views or findings determined to be erroneous or based on evidence that must be rejected, (2) whether reassignment is advisable to preserve the appearance of justice, and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving the appearance of fairness. [*People v Walker*, 504 Mich 267, 285-286; 934 NW2d 727 (2019) (quotation marks and citation omitted).]

At the outset, we observe that plaintiff's argument and citations to authority do not concern reassignment to a different judge on remand but is a regurgitation of her motion to disqualify Judge

---

[5] While defendant did raise an advice-of-counsel defense in his reply brief below, a reply brief is not the proper vehicle for raising a new theory. See MCR 2.116(G)(1)(a)(*iii*) ("Reply briefs must be confined to rebuttal of the arguments in the nonmoving party or parties' response brief . . . ."). See also *Equity Funding, Inc v Village of Milford*, 342 Mich App 342, 348; 994 NW2d 859 (2022). This is in part because the opposing party generally cannot respond to reply briefs. That is significant here because, in plaintiff's response to defendant's motion for summary disposition, plaintiff rightly asserted that the first two elements of her claim were not being challenged, and defendant was only contesting the third element. Additionally, it is clear that the trial court did not consider any argument raised in defendant's reply brief when it granted defendant's motion— the court's order states only that it was granting summary disposition in favor of defendant for the reasons stated in defendant's motion for summary disposition.

Kuhnke. That motion was denied by Judge Kuhnke, referred by the Supreme Court Administrative Office (SCAO) to Judge Mark S. Braunlich and denied by him, plaintiff's application for leave to appeal that decision was denied by this Court,[6] and plaintiff's application for leave to appeal to our Supreme Court was likewise denied.[7] Regardless, addressing the merits of plaintiff's argument, she has not established that remand to a different judge is required.

At the core of plaintiff's argument is her belief that Judge Kuhnke's conduct gives rise to the appearance of impropriety. In our opinion, nothing that Judge Kuhnke has done gives rise to such an appearance.

Plaintiff first complains that, when defendant petitioned for a personal protection order (PPO) against plaintiff in October 2019, Judge Kuhnke improperly reassigned defendant's petition to Judge Connors. In his petition for a PPO, defendant checked the box indicating that there was a pending action between himself and plaintiff, and listed the case number for the action between defendant's company and plaintiff's daughter that had been before Judge Connors. Defendant's petition for a PPO was originally assigned to a different judge, but Judge Kuhnke reassigned the matter to Judge Connors. In her order of reassignment, Judge Kuhnke checked the box stating that there was a case involving plaintiff and defendant that had previously been assigned to Judge Connors and provided the case number for the action between defendant's company and plaintiff's daughter, which, again, defendant had listed in his petition for a PPO.

According to plaintiff, it was improper for Judge Kuhnke to reassign defendant's petition for a PPO to Judge Connors because plaintiff and defendant never had a case before Judge Connors—the case that was before Judge Connors involved defendant's company and plaintiff's daughter, not plaintiff. While that is true, we do not believe that Judge Kuhnke did anything improper by reassigning the PPO petition to Judge Connors. Defendant's and plaintiff's contentious relationship, which led defendant to request a PPO, has its origins in the case involving defendant's company and plaintiff's daughter that was litigated before Judge Connors. Understanding that litigation would thus certainly be helpful to understanding defendant's request for a PPO. Nothing about Judge Kuhnke's reasonable decision to assign defendant's PPO petition to Judge Connors supports defendant's assertion that remand to a different judge is required.

Plaintiff insists that Judge Kuhnke at the very least appears biased because the judge supposedly lied when she stated in an order that she had referred plaintiff's motion for disqualification to the SCAO. The disputed order was entered on February 6, 2023, and it denied plaintiff's motion for reconsideration of Judge Kuhnke's earlier denial of plaintiff's motion to disqualify the judge. In her motion for reconsideration, plaintiff asked that Judge Kuhnke refer the matter to the SCAO so that plaintiff's motion could be reviewed by a judge from a different circuit because Judge Kuhnke was the chief judge of the Washtenaw Circuit Court. In her February 6, 2023 order, Judge Kuhnke stated that she was denying plaintiff's motion because the court had "already referred the motion for recusal to the SCAO for assignment to another judge." Plaintiff

---

[6] *Welch v Selby*, unpublished order of the Court of Appeals, issued November 27, 2023 (Docket No. 366719).

[7] *Welch v Selby*, ___ Mich ___ (2024) (Docket No. 166532).

-10-

claims that this was untrue because, after plaintiff reached out to the SCAO in March 2023 to get an update on Judge Kuhnke's referral, the SCAO wrote back stating that the SCAO contacted the Washtenaw Circuit Court after hearing from plaintiff, and "[t]he court submitted the request for assignment to SCAO on March 23, 2023[.]" This supports that the statement in Judge Kuhnke's February 6 order was factually incorrect, but that is not the sort of irresponsible or improper conduct that would cause a reasonable person to question Judge Kuhnke's impartiality, and it certainly does not establish that remand to a different judge is required.

Lastly, plaintiff contends that all of her previous arguments as to why Judge Kuhnke is biased were confirmed by Judge Kuhnke's short order granting defendant's motion for summary disposition for the reasons stated in defendant's motion. It is true that Judge Kuhnke's order granting defendant's motion was not thorough, but that is nothing unusual for court orders. And while it may be uncommon for a trial court to adopt a party's analysis as the court's own, it is not unheard of. In fact, it is exceedingly common for a court to agree with the analysis put forth by one of the parties before the court, even if the court does not explicitly adopt that party's analysis as the court's own. To the extent that plaintiff complains that Judge Kuhnke "adopted" allegedly-improper arguments made by defendant when the court adopted defendant's analysis, we note that those contested arguments were made in the context of defendant's request that filing restrictions be put on plaintiff, and his request that plaintiff be required to pay a bond. When the trial court granted summary disposition in favor of defendant "for the reasons stated in Defendant's Motion and Brief in Support," the court denied defendant's requests for filing restrictions and security for costs. This suggests that, contrary to plaintiff's argument, Judge Kuhnke in no way accepted or endorsed the arguments that plaintiff claims were improper. Additionally, while Judge Kuhnke ruled against plaintiff, it is well-recognized that this fact, standing alone, does not in any way suggest that the judge was biased against plaintiff. See *Bayati v Bayati*, 264 Mich App 595, 603; 691 NW2d 812 (2004) ("Repeated rulings against a party, no matter how erroneous, or vigorously or consistently expressed, are not disqualifying.").[8] We accordingly reject plaintiff's argument that the case must be remanded to a different judge.

## IV. CONCLUSION

For the reasons explained in this opinion, we reverse the trial court's order granting defendant's motion for summary disposition. The trial court agreed with defendant that he was entitled to summary disposition because there was no question of fact that the charges against plaintiff were supported by probable cause. This was error because there is a question of fact whether plaintiff's conduct of pushing defendant was justified. We decline to address defendant's advice-of-counsel defense because it was not properly raised below, but nothing in this opinion should be construed as prohibiting defendant from raising an advice-of-counsel defense on remand if his doing so would be proper. Finally, we reject plaintiff's argument that remand to a different judge is required.

---

[8] Plaintiff argued in the trial court that Judge Kuhnke was disqualified from presiding over plaintiff's case because plaintiff had filed a federal lawsuit naming Judge Kuhnke as a defendant. Plaintiff no longer makes this argument on appeal, so we do not address it.

Reversed and remanded for further proceedings.  We do not retain jurisdiction.

/s/ Colleen A. O'Brien
/s/ Stephen L. Borrello